Jeanette E. CONSOR, on behalf of herself and all others similarly situated

v.

OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA.

No. CA3–76–237–F.

United States District Court,
N. D. Texas,
Dallas Division.

March 19, 1979.
On Rehearing May 22, 1979.

Neil H. Cogan, Matthew W. Finkin, Dallas, Tex., for plaintiff.

William L. Keller, Allen Butler, David M. Ellis, Clark, West, Keller, Sanders & Butler, Dallas, Tex., for defendant.

MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

Jeanette E. Consor claims that Occidental Life Insurance Company of California discriminated against her when she applied for employment in 1975. On May 6, 1975, Ms. Consor went to a local office of the Texas Employment Commission to look for a job. (Transcript of proceedings January 8, 1979, hereinafter "TP"; deposition of Jeanette E. Consor, hereinafter "CD", at 14). She found a job advertised for a sales representative at Occidental Life for which she felt qualified, and a commission employee interviewed her about her interest in the job. TP; CD at 14–15. The Commission employee called Occidental's Group Manager, Mr. Hassell, and Mr. Hassell told the Commission employee to have the plaintiff call to set up an appointment for a job interview. TP; CD at 16. When informed that Ms. Consor was interested in the job, Ms. Consor said she overheard Mr. Hassell say to the Commission employee words to the

effect that Ms. Consor was "a young lady who can't be discriminated against." TP

Ms. Consor called Mr. Hassell on May 7, 1975 to set up an appointment. TP; CD at 17. Mr. Hassell asked her why she was interested in the job, because few women were in this field, and women had not held this particular job before in the company. TP; CD at 17. Ms. Consor replied that she believed that the money was good and there was opportunity for advancement. TP. Mr. Hassell told her there would be a lot of travel required, but Ms. Consor insisted that she was still interested in the job and told him she would be in the next day for an interview. TP; CD at 17 18.

On May 8, 1975, Ms. Consor telephoned Mr. Hassell and said she would come by at 3:00 p. m. for her job interview. TP; CD at 18. At the interview Mr. Hassell described the negative aspects of the "sales representative" job. TP. These negative conditions included a lot of travel (sometimes involving overnight or longer stays out of town), the necessity of meeting blue collar workers at night in factories, and the necessity of being able to relocate. TP; CD at 18- 25. Mr. Hassell also reviewed Ms. Consor's resume, and expressed doubt that her husband would permit her to take the job. TP.

Ms. Consor replied that she had put herself through college, had had work with responsibility, and that she was willing to travel, and stay overnight. TP. She stated her husband would not object. TP. She disagreed with Mr. Hassell and said that her recollection was that relocation and experience were not part of the TEA list of job requirements. TP.

In her interview with Mr. Hassell, Ms. Consor did not take his emphasis on the negative aspects of the job as disparaging. TP. Although she was at first offended that Mr. Hassell suggested that she talk to her husband about the job, by the end of the interview she did not feel offended by the suggestion. TP. Ms. Consor never filled out a formal application for a job at Occidental, but Mr. Hassell never told her that she would not be permitted to do so.

TP. The job for which she applied was filled in the summer of 1978. TP.

Mr. Hassell said that he would have to call his Los Angeles office, and that he would be in touch with Ms. Consor. TP. He handed back Ms. Consor's resume, and indicated that he knew how to contact her. TP. He also indicated that Ms. Consor, with her background, might be better suited to working in the Dallas Trade Mart. TP; CD at 21.

Ms. Consor returned home and called the Texas Employment Agency to check out the job requirements. TP. She did not know where the Texas Employment Agency received the job description that she had read at the TEA. TP. She discovered that the job had been pulled from the file until May 19, 1975. TP. On May 9, 1975 she went to the EEOC and attempted to file a discrimination complaint. TP. She held off formally filing the complaint until May 19, 1975 at the suggestion of the EEOC personnel. TP; CD 30 -31; 42–44. She received no call from Mr. Hassell or Occidental on or before May 19, 1975. TP. She did not call the TEA or Occidental on May 19, 1975 and did not call Occidental during the period of time during May 8, 1975 to May 19, 1975. TP.

In the winter of 1974 and the spring of 1975, Ms. Consor was seeking a job with the Department of Housing and Urban Development, the Welfare Department, and other places. TP. She never filed discrimination charges against these offices. TP. Ms. Consor applied to law school in late December, 1974 or early January, 1975. TP. She was accepted at the SMU School of Law in Dallas, Texas in June, 1975, and began attending classes in August, 1975. TP. During her three years in law school she would not have accepted a job with Occidental. TP. From June 1975 until August, 1975, Ms. Consor indicated that she would have considered her options if Occidental had offered her a job. TP. Ms. Consor took the LSAT examination for law school in July, 1974 and again in the late fall of 1974; she also took prelaw courses in college. TP.

*Questions Presented for Decision*

(1) Does Jeanette Consor state a claim for relief under Title VII?

(2) Should this Court certify a class, and, if so, what are the proper parameters of that class?

*Title VII Claims*

Defendant filed a motion for summary judgment on plaintiff's individual claim, and a motion to dismiss the class allegations on September 20, 1976. Plaintiff contends that the Court should not consider defendant's motion for summary judgment, citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Johnson v. American Credit Co.*, 581 F.2d 526, 532–33 (5th Cir. 1978), apparently reasoning from these cases that when a class action is asserted, a motion for summary judgment is improper. The *Huff* decision has been widely quoted by class action plaintiffs in support of the conclusion that the District Court should refrain from considering the merits of plaintiff's individual claim until time of trial. When the entire decision is read, however, not just selected language, it is clear that the Court had no intention of eliminating the application of Rules 12 and 56 of the Federal Rules of Civil Procedure in class action suits.

The *Huff* Court recognized the "tensions", as it termed the delemma; between the policy of finding out as much as possible about the plaintiff's claim at an early stage in order to make a decision about the proper scope of the class the plaintiff sought to represent, and the policy of not finding out too much so that the Court began to speculate that the plaintiff would not succeed on the merits and deny class certification on the basis of that speculation. In more recent decisions the Fifth Circuit has clarified *Huff*, requiring the District Court to hold a class certification hearing if there is any doubt with respect to the propriety of a class action, *Satterwhite v. City of Greenville*, 578 F.2d 987 (5th Cir. 1978), but not make any *speculative* decision concerning plaintiff's likelihood of success on the merits when considering the propriety of a class action.

". . . (A) class plaintiff who otherwise meets the demands of 23(a) and (b) should not be found to be disqualified *solely* by an advance determination that his claim is *predictably* not a winning claim and, therefore, he cannot adequately represent the class as mandated by 23(a)(4)." *Huff, supra*, at 714 (emphasis added)

A decision to grant a defendant's motion to dismiss or motion for summary judgment is not a speculative decision, or a prediction that the plaintiff will not succeed. It is rather a determination as a matter of law, or applying the law to the facts, that the plaintiff cannot succeed on the merits. Where the party requests the Court to consider a motion to dismiss or a motion for summary judgment prior to the court's determination regarding the propriety of a class action, the Court may properly consider that motion and make a ruling. *Huff* prevents the Court from transforming a motion to certify a class, standing alone, into a motion to determine plaintiff's likelihood of success on the merits. If the court is only considering a motion to certify a class, *Huff* suggests that the Court should accept plaintiff's allegations concerning the merits of his claim and then determine if the requirements of Rule 23 are met.

If the Court should conclude that plaintiff's individual complaint should be dismissed or summary judgment should be granted for defendant on plaintiff's individual complaint, the Court may not automatically dismiss the class allegations. A plaintiff who no longer has a viable individual claim may represent a class if he can still satisfy the requirements of Rule 23. *Satterwhite v. City of Greenville*, 578 F.2d 987 (5th Cir. 1978).

As stated in *Huff v. N. D. Cass Co.*, 485 F.2d 710, 714 (5th Cir. 1973):

Yet there is no doubt that the Court could lay bare at a preliminary stage this fact (the failure of the individual plaintiff to state a claim) concerning the plaintiff, and, having done so, conclude plain-

tiff was not a proper representative because he lacked the nexus with the class and its interest and claims which is embraced in the various requirements of 23(a) and (b).

I now proceed to review defendant's motion for summary judgment.[1]

■ A plaintiff must establish four elements to make a prima facie showing of a discriminatory refusal to hire, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), including (1) that he or she belongs to a minority, (2) that he or she applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite his or her qualifications, he or she was rejected and, (4) that after his or her rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications. Defendant contends that Ms. Consor was not an applicant and was never rejected.

■ Defendant first notes that although Ms. Consor had an interview, she never filled out an application form and was therefore not an "applicant" for the position with Occidental. Defendant's answers to interrogatories, however, indicate that there are twelve "steps of selection and placement", the first being a preliminary interview and the second being "completion of employment and supplementary applications." Under Occidental's hiring procedures, it was not necessary to fill out a written application to become a "McDonnell Douglas" applicant; rather Ms. Consor was an applicant when she completed the preliminary interview. Therefore, I reject defendant's argument that Ms. Consor was not an applicant.

Defendant's second argument, that Ms. Consor was never rejected, is more persuasive. After the preliminary interview, Occidental may "screen out" certain applicants before proceeding to the next stage of the employment procedure. Ms. Consor was not screened out but was specifically told that she would be contacted. She was never told anything that would indicate that she was unqualified for the job or not being considered for the vacancy. Although Mr. Hassell questioned her about whether she would enjoy certain features of her work (travel, late night work, etc.), Ms. Consor indicated that she did not take his emphasis on the negative aspects of the job as disparaging, but rather these were a proper subject of discussion. TP. The only other evidence of discrimination she cited in her deposition was a vague feeling that Mr. Hassell's attitude was not quite to her liking. CD, page 34. At trial, Ms. Consor did say that Mr. Hassell did not keep her resume, but she also said he insisted that he was familiar with it and knew how to get in touch with her.[2] Finally, Ms. Consor, although told that Occidental would contact her, never waited for a phone call, but dashed to the local EEOC to report her charge of discrimination. Occidental never had a chance to reject or accept Ms. Consor; she had already assumed the worst. Ms. Consor did postpone her decision for a few days, waiting to formally file with the EEOC until 13 days after her interview. I do not think that the expiration of 13 days is long enough to wait before deciding that Occidental had de facto rejected her application. Interestingly, Ms. Consor waited nearly six months before she learned whether she had been accepted or rejected

---

1. A district court in the Northern District of Texas should generally not consider motions for summary judgment prior to the court's determination of the class certification issue in cases filed after March 1, 1978. On that date the Northern District of Texas enacted local rules which restrict discovery in class actions to "facts relevant to certification of the alleged class" and "discovery of facts relevant only to the merits of the lawsuit shall not begin until after the Court has ruled on the motion for certification." Local Rule 10.2(c). A district

court could still properly consider a motion to dismiss the individual plaintiff's claim.

This case was filed in 1976, when the Local Rule was not in effect, and the Plaintiff had nearly two years to rebut Defendant's motion for summary judgment.

2. Plaintiff's exhibit 7 shows that Mr. Hassell on May 8, 1975 did not believe that he had rejected the plaintiff. His notes clearly indicate that he contemplated having second interview with the plaintiff.

at Southern Methodist University Law School.

I find that plaintiff has failed to establish her rejection by the defendant, and summary judgment should be granted in favor of the defendant on plaintiff's individual claim.

*Class Certification*

■ Plaintiff is not a member of the class she seeks to represent because she has no claim under Title VII (see earlier discussion)[3] and therefore does not possess the same interest and suffer the same injury as other potential class members. *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). It is proper to take this into consideration as a factor in determining a motion for class certification, because it shows Ms. Consor's lack of nexus with the class. "It is the lack of nexus, rather than a lack of merit to her claim of discrimination, that proves she is not a proper class representative." *Satterwhite v. City of Greenville, supra.* Her claim is not typical of the claims of other proposed members of the class because she was never rejected by the defendant, has never suffered any legal cognizable injury either in common with the class or otherwise, *Satterwhite v. City of Greenville, supra*, 992, and therefore does not have sufficient nexus with her proposed class.

Plaintiff also has little connection with the broad class she seeks to represent. Plaintiff seeks to represent employees of Occidental who were allegedly denied promotions on the basis of sex. I think that if plaintiff were an employee of Occidental, her familiarity with Occidental's business would probably justify her representation of such a class. Also, if plaintiff alleged specific practices, such as the improper use of certain allegedly discriminatory tests in defendant's hiring and promotion, I think certification might be proper as to those "across the board" practices that affected all members of the class. Title VII is clearly an area where class actions should be utilized to accomplish in a single proceeding what would otherwise become a multitude of individual lawsuits. On the other hand "nexus" means nothing unless there is some connection between the class and the representative. *Payne v. Travenol Laboratories, Inc., supra.*

While it would place an almost impossible burden on class action plaintiffs who are applicants, such as Ms. Consor, to require their familiarity with all the operations of defendant's business, courts have consistently expressed concern that plaintiffs seeking to act as class representatives have the kind of personal stake in the litigation that would insure adequate representation of the interest of class members. *East Texas Motor Freight v. Rodriguez, supra; Satterwhite v. City of Greenville, supra.* Here plaintiff as an applicant, had no contact with the class she seeks to represent for a period of at least three years when she was attending law school, and when she took an extended trip abroad. Her only personal contact with defendant was at a short interview in May, 1975; all other contact has occurred in this lawsuit. Plaintiff also alleges no specific hiring and promotional practices which affect the entire class, only the vague assertions that hiring is somewhat controlled through a central office and statistics indicate that there are few women in various positions in defendant's company. Although the statistics seem to indicate that Occidental has not hired a significant number of women, I do not believe that these statistics alone are sufficient to bridge the nexus requirement;

---

**3.** Lack of merit of plaintiff's individual claim is a proper factor to consider in determining whether continuing nexus with the class exists. *Camper v. Calumet Petrochemicals, Inc.*, 584 F.2d 70 (5th Cir. 1978). Dismissal of the class may be proper when plaintiff lacks an individual claim for relief. *Davis v. Roadway Express, Inc.*, 590 F.2d 140 (5th Cir. 1979). The fact that plaintiff accepted another job or went to law school during the pendency of this suit is not, in itself, however, grounds for saying plaintiff is not a member of the class. Plaintiff need not starve in order to preserve her status as class representative. *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976); *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968); *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895 (5th Cir. 1978).

something more is required to link the plaintiff applicant with the employees she seeks to represent (e. g. familiarity with the defendant's business, a common discriminatory practice) and that is lacking in this case.

▪ Given plaintiff's very minimal contact with the defendant, it seems logical to reject Ms. Consor's request that as an applicant for a job at Occidental, she be permitted to represent employees or former employees in order to represent those persons allegedly discriminated against during the promotion process at Occidental. *See Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1975) (typically requires some familiarity with defendant's business and treatment suffered by an alleged class). A number of other courts have also drawn a line between employees representing job applicants and vice versa, *Chambers v. Franchise Realty Interstate Corp.*, 12 F.E.P. 1817 (N.D.Ohio 1976); *Peltier v. City of Fargo*, 10 F.E.P. 701 (N.D.D.1975); *Smith v. Liberty Mutual Insurance Co.*, 11 F.E.P. 734 (N.D.Geo.1974), but my decision does not mean that an applicant may never represent an employee. Rather, there must be some "nexus" or "animus", as Judge Higginbotham has suggested, relating the applicant's claim of discrimination and the discrimination allegedly practiced against the employees. *Vuyanich v. Republic National Bank of Dallas, supra; Payne v. Travenol Laboratories, Inc., supra.* There is no evidence in this case establishing such a "nexus" or "animus" between applicant Consor and employees of Occidental sufficient to permit her representation of Occidental's employees in this case. Ms. Consor was never employed by Occidental; thus, if I were to certify this as a class action, I would limit the class to applicants for employment at Occidental.

Plaintiff testified that she had no knowledge of whether any female was denied a promotion or a job because of her sex at Occidental. Defendant argues that the class, if any, should be restricted to the persons associated in the group field office where plaintiff applied for a job since plaintiff plainly has no familiarity with the rest of Occidental's operation. Plaintiff conducted an interview for a position in a group field sales office located in Dallas, one of 45 such offices. Each office is ostensibly autonomous in its recruitment, hiring, promotion and day to day operations. Defendant argues that plaintiff has failed to establish that the alleged discrimination aimed at her is common or typical of any practices elsewhere.

I reject this limitation which defendant attempts to place on the scope of the class. Plaintiff testified that Mr. Hassell told her that he had to check with the home office before he would talk further with Miss Consor; that testimony is uncontradicted. A field manager's guide is prepared by the home office to assist managers in their recruitment, hiring and promotion practices. The home office apparently does make a few decisions with regard to hiring and promotions (salary, for example) and decisions to hire or promote are referred to the home office for final approval. See supplementary answers to interrogatories, No. 43. The field manager has some autonomy in making these decisions, but that autonomy is bridled by the home office controls. Therefore, I think Miss Consor could properly represent the job categories listed on defendant's exhibit No. 1, although only applicants for those positions, and not current employees allegedly denied promotion on the basis of sex.

▪ Plaintiff, as I stated earlier, is not an adequate representative of any class in this case in part because she herself cannot and does not state a claim under Title VII. If plaintiff can state a claim under Title VII or if plaintiff can represent a class although she herself has no claim, I determine that she could represent the following class if the record contained information sufficient to satisfy the numerosity requirement of Rule 23. The class she could represent would be rejected applicants for jobs with Occidental in areas listed on defendant's exhibit No. 1 who allegedly suffered sexual discrimination during the recruitment or hiring process. Plaintiff has made

no showing on this record of how many persons might be included in this class, and the Court cannot speculate as to facts not in evidence when reviewing the factors under Rule 23. Plaintiff acknowledged that she had no evidence or knowledge of anyone who is an applicant who has suffered discrimination. Numerosity sufficient to justify certification of a class has not been established and for this additional reason, I deny certification of a class in this case. *See Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975) (plaintiff cannot represent a speculative class); *Taylor v. Safeway Stores*, 524 F.2d 263 (10th Cir. 1975); *Thompson v. Sun Oil Co.*, 523 F.2d 647 (5th Cir. 1975); *Marshall v. Target Stores*, 11 F.E.P. 775 (E.D.Mo.1975).

I therefore dismiss plaintiff's individual claim with prejudice, and dismiss the class claims without prejudice.

It is so ORDERED.

## OPINION ON REHEARING

On March 19, 1979, this Court granted summary judgment in favor of the defendant, and entered a judgment. On March 23rd, 1979, the plaintiff filed a motion to vacate that judgment, and later, on April 11, 1979, the plaintiff filed a notice of appeal. The Court is faced with the preliminary question of whether it has jurisdiction to consider the motion to vacate judgment, because the filing of a notice of appeal usually divests the District Court of jurisdiction. *Turner v. HMH Publishing Co.*, 328 F.2d 136 (5th Cir. 1964).

■ A motion to alter or amend a judgment [Fed.R.Civ.Pro. 59(e)] or a motion for new trial [Fed.R.Civ.Pro. 59(b)] filed within ten days of the entry of judgment suspends the time for filing a notice of appeal. Fed.R.App.Pro. 4(a). A motion for relief from judgment filed more than ten days after the entry of judgment under Rule 60(b) does not suspend the time for filing a notice of appeal. *Silas v. Sears, Roebuck & Co., Inc.*, 586 F.2d 382 (5th Cir. 1978).[1]

■ The Court should liberally construe motions filed within ten days after the entry of judgment, and if they seek relief from the judgment, they should either be interpreted as motions for new trial or motions to alter or amend the judgment, thus suspending the time for appeal. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kurtenbach*, 525 F.2d 1179 (8th Cir. 1975) (motion for "reconsideration" and "clarification" under Rule 60(b) filed three days after entry of judgment construed as Rule 59(e) motion; "nomenclature is not controlling"); *Jones v. Nelson*, 484 F.2d 1165 (5th Cir. 1973) (motion for new trial after summary judgment entered is technically incorrect, but Court construes as proper motion under Rule 59, and time for appeal is suspended); *Theodoropoulos v. Thompson-Starrett Co.*, 418 F.2d 350 (2d Cir. 1969), cert. den'd, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (1970) (motion to vacate dismissal for lack of prosecution, filed 10 days of the entry of judgment, equitably construed as motion under Rule 59); *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 632 (2d Cir.) cert. den'd, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). Plaintiff's motion to vacate judgment, equitably construed, is a motion under Rule

---

1. Parties seeking to appeal a final judgment must file a notice of appeal within thirty days or the Court of Appeals does not have jurisdiction over the appeal. Fed.R.App.Pro. 4; *Edwards v. Joyner*, 566 F.2d 960 (5th Cir. 1978). A court may consider a motion for relief from judgment, filed more than ten days after entry of judgment, during the pendency of an appeal and if the district court decides the motion should be granted, counsel for the movant should request the Court of Appeals to remand the case so that a proper order can be entered. *Pioneer Insurance Co. v. Gelt*, 558 F.2d 1303 (8th Cir. 1977); *First National Bank of Salem v.*

*Hirsch*, 535 F.2d 343 (6th Cir. 1976); *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976).

While a motion filed under Rule 60(b), or construed by the court as a motion under Rule 60(b) does not suspend the time for filing an appeal, the denial of a motion under Rule 60(b) may itself be appealed within thirty days of its entry. *Edwards v. Joyner*, 566 F.2d 960 (5th Cir. 1978). If an appeal is not also filed within thirty days of the entry of the original judgment, the only issues on appeal involve the denial of the Rule 60 motion. *Id.; Cline v. Hoogland*, 518 F.2d 776 (8th Cir. 1975).

59(e) to alter or amend the judgment which suspends the time for filing of a notice of appeal. Fed.R.Civ.Pro. 59(e); Fed.R.App. Pro. 4(a).

■ The plaintiff filed a premature notice of appeal before this court ruled on her motion to alter or amend the judgment. A premature filing of a motion does not divest the district court of jurisdiction to consider and rule on a Rule 59 motion to alter or amend judgment (or a motion for new trial). *United States v. Crescent Amusement Co.,* 323 U.S. 173, 177, 65 S.Ct. 254, 89 L.Ed. 160 (1944); *Hawkins v. Lindsley,* 327 F.2d 356, 359 (2d Cir. 1964); *Turner v. HMH Publishing Co.,* 328 F.2d 136 (5th Cir. 1964); *Sampson v. Ampex Corp.,* 335 F.Supp. 242 (S.D.N.Y.1971). The Court may consider and rule on Plaintiff's motion to vacate judgment, which the Court has construed as a motion to alter or amend the judgment.[2]

Plaintiff first contends that the Court should not have considered Defendant's motion for summary judgment. The Court's memorandum opinion explains why this position is incorrect as a matter of law.

Plaintiff also contends that the court overlooked an issue of material fact. Mr. Hassell testified on deposition that Ms. Consor was instructed by him to get back in touch with his office, while Ms. Consor testified at the class action hearing that Mr. Hassell said that he would contact her. In my entry of summary judgment for the defendant, I assumed that Ms. Consor's version was correct, and still concluded that Ms. Consor could not prevail on the merits of her claim. If I were to assume that Mr. Hassell requested Ms. Consor to get in touch with his office, her failure to do so supports my decision that she was never "rejected".

Plaintiff finally contends that the Court erred in holding that *McDonnell Douglas* provides the only means for establishing a prima facie case of individual discrimination. Plaintiff argues that prima facie discrimination may also be shown through evidence of a broad-based policy of discrimination.

■ "A broad-based policy of employment discrimination" may establish a prima facie case of individual discrimination. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 359, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Plaintiff introduced statistical evidence at the class action hearing which indicates that defendant has hired few female sales representatives and has never hired a female sales representative for the Dallas office. Plaintiff can survive a motion for summary judgment on her individual claim on the basis of this evidence.

For the reasons stated, I hereby grant Plaintiff's motion to alter or amend the judgment, deny Defendant's motion for summary judgment as to plaintiff's individual claim, deny class certification for the reasons stated in my memorandum opinion, and set this case for trial on August 20, 1979.

It is so ORDERED.

---

2. Effective August 1, 1979 "(i)f a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party . . . under Rule 59 to alter or amend the judgment . . . the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. . . . " Fed.R. App.Pro. 4(a)(4), effective August 1, 1979.

The new rules will codify the current law in the Fifth Circuit and the result in this case, hopefully making it unnecessary to rule on this question again.