As summarized by a leading treatise, the effect of the 1978 Code's provision is that:

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury of an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy § 523.16 at 523–118 (15th ed. 1983).

Under the present facts, no debt for "willful and malicious injury *by the debtor*", Section 523(a)(6), is shown. The debtors Quezadas' intentional harboring of the vicious pit bulldog within their fence is not shown to be conduct intentionally exposing others to harm by the vicious dog. The negligence of the debtors in permitting the dog to escape when they opened the gate is not shown to be conduct designed to cause deliberate or intentional injury.

We have found only isolated decisions addressing the issue before us. *In Matter of Sadwin,* 15 B.R. 884 (D.C.M.D.Fla.1981), affirming 3 B.R. 581 (Bkrtcy.M.D.Fla.1980),

as well as in *Matter of Cecko,* 27 B.R. 26 (Bkrtcy.N.D.Ohio 1982), upon a similar analysis the courts reached the same conclusion as we have here, in rejecting claims of nondischargeability for injuries resulting from the harboring of a vicious dog. In *In Re Rines,* 18 B.R. 666 (Bkrtcy.M.D.Ga.1982), however, the court concluded injury so caused was nondischargeable, based upon its determination that the 1978 Bankruptcy Code amendment was not intended to overrule the reckless-disregard standard for nondischargeability; for reasons earlier noted, we disagree with this rationale.

*Conclusion*

We AFFIRM, finding as did the previous courts that the liability for injuries caused by a vicious dog negligently let loose are not excepted from dischargeability in bankruptcy as being a debt for "willful and malicious injury by the debtor" within the meaning of Section 523(a)(6).

AFFIRMED.

Edgar Allen **HARRELL, Plaintiff-Appellant Cross-Appellee,**

v.

**DIXON BAY TRANSPORTATION COMPANY, Defendant-Appellee Cross-Appellant.**

No. 80–3490.

United States Court of Appeals, Fifth Circuit.

Oct. 28, 1983.

---

Frank S. Bruno, New Orleans, La., for plaintiff-appellant cross-appellee.

James A. Cobb, Jr., New Orleans, La., for defendant-appellee cross-appellant.

Before TUTTLE*, POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Edgar Allen Harrell ("Harrell"), a Jones Act seaman, appeals from that part of an otherwise favorable judgment, which set

* Circuit Judge of the Eleventh Circuit, sitting by designation.

aside, for lack of sufficient evidentiary support, a jury award of damages for the asserted arbitrary and capricious refusal of his employer, Dixon Bay Transportation Company ("Dixon Bay"), to pay him additional maintenance and cure benefits. Dixon Bay cross-appeals from that part of the judgment, based on jury findings, which awarded Harrell damages, and maintenance and cure, for personal injuries sustained while a member of the crew on board one of Dixon Bay's vessels. The primary question before us is whether we have appellate jurisdiction of Harrell's appeal. The answer to that question depends on whether Harrell's post-judgment motion, which asked the district court to reconsider and withdraw a judgment notwithstanding the verdict rendered for Dixon Bay setting aside that part of the original judgment for damages based on Dixon Bay's arbitrary and capricious refusal to pay Harrell maintenance and cure benefits, was "a motion to alter or amend the judgment" within the purview of Fed. R.Civ.P. 59(e); and if so, then whether Harrell's motion for reconsideration suspended the commencement of the thirty-day time period for filing a notice of appeal until after entry of the district court's order denying his motion. Finding that we have appellate jurisdiction, and that the final judgment of the district court is correct, we affirm.

## I.

Harrell's Jones Act and general maritime law claims were tried to a jury, which returned a verdict for him on January 29, 1980. The jury found that Dixon Bay was negligent; that its vessel, the M/V DIXON BAY, was unseaworthy; and that Dixon Bay's negligence and the unseaworthiness of its vessel were the producing and proximate causes, respectively, of Harrell's personal injuries. Based on these findings, the jury awarded Harrell $60,000 in damages. The jury further found that Harrell was entitled to receive maintenance at the rate of $14 a day from July 2, 1974, the day of his injury, until January 20, 1980, the day the jury found that Harrell had achieved maximum medical cure; that Dixon Bay had stopped paying Harrell maintenance and cure benefits before he reached maximum recovery; and that Dixon Bay had arbitrarily and capriciously refused to pay Harrell maintenance and cure benefits. Based on these findings, the jury awarded Harrell $28,392 in maintenance and cure benefits and $28,910 in damages for Dixon Bay's arbitrary and capricious refusal to furnish such benefits.

Immediately after receipt of the jury verdict, Harrell moved for a judgment on the verdict, which the district court orally granted. Thereafter, on February 7, 1980, the district court rendered a written judgment, which was entered on the same day, based on the jury verdict, awarding Harrell judgment against Dixon Bay for $60,000 on his negligence and unseaworthiness claims, $28,392 on his maintenance claim, and $28,910 on his claim for arbitrary and capricious failure to provide maintenance and cure, together with interest from date of judicial demand and costs of suit. On February 15, 1980, Dixon Bay filed a motion to set aside the February 7, 1980 judgment and to render a judgment for it notwithstanding the verdict ("judgment n.o.v."). After a hearing thereon, the district court, on April 18, 1980, rendered an order, entered on April 21, 1980, granting in part and denying in part Dixon Bay's motion. The district court in this connection held that, as a matter of law, Dixon Bay did not arbitrarily and capriciously refuse to pay Harrell maintenance and cure benefits, and the court accordingly set aside the jury's $28,910 award for such claimed arbitrary refusal, and ordered entry of judgment n.o.v. "dismissing with prejudice" Harrell's claim for alleged arbitrary and capricious failure to provide maintenance and cure. However, the court further held that there was ample evidence to support the jury's award against Dixon Bay for Harrell's personal injuries.[1]

1. In this connection, the court's April 21 order provided that "the jury verdict awarding plaintiff $60,000.00 for plaintiff's claim for damages resulting from defendant's negligence and/or

Within ten days after the entry of this order, Harrell, on May 1, 1980, filed a "Motion for Reconsideration of Judgment Notwithstanding the Verdict," praying that the district court withdraw its judgment n.o.v. for Dixon Bay. After a hearing thereon, the district court, on May 22, 1980, denied Harrell's motion for reconsideration. Thereafter, on June 19, 1980, Harrell filed a notice of appeal

"... from the decision ... rendered on April 18, 1980 [entered April 21], Reconsideration denied May 22, 1980, granting Defendant's motion for judgment notwithstanding the verdict and reversing the determination of the jury verdict of February 7, 1980, awarding Plaintiff damages for Defendant's arbitrary and capricious failure to pay maintenance and cure to Plaintiff."

On July 2, 1980, Dixon Bay filed its own notice of appeal.

## II.

■ Dixon Bay has moved to dismiss Harrell's appeal as untimely filed, contending that Harrell's motion for reconsideration of the district court's order entered April 21, 1980, which set aside the jury's award of damages for Dixon Bay's arbitrary and capricious refusal to pay Harrell maintenance and cure benefits, did not further postpone the commencement of the time period for filing a notice of appeal until after entry of the order denying his motion.

Rule 4(a), Fed.R.App.P., provides, in part, that:

"(1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from ...."

However, the Rule further provides that:

"(4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for a judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing."

A judgment favorable in all respects to Harrell was entered on February 7, 1980. Under Rule 4, Dixon Bay's timely motion for judgment n.o.v. (under Fed.R.Civ.P. 50(b)) suspended commencement of the thirty-day time period for filing a notice of appeal until the day after April 21, 1980, when the district court's order granting in part and denying in part Dixon Bay's motion was entered. *Hammond v. Public Finance Corp.*, 568 F.2d 1362, 1363 (5th Cir. 1978). On May 1, 1980, within ten days

---

the unseaworthiness of the vessel M/V Dixon Bay will be and is hereby made the JUDGMENT of the Court."

The district court further held, as a matter of law, that the jury incorrectly determined the number of days that Harrell was entitled to receive maintenance and cure benefits in that the jury failed to give Dixon Bay credit for the time Harrell was employed as a school teacher, and the time he spent in various hospitals from July 1974 to January 1980. The court's April 21 order accordingly ordered a remittitur of $5,110 of the original $28,392 maintenance and

cure award, or, if the remittitur was not accepted within ten days, a new trial on the maintenance and cure issue. Harrell elected to accept the remittitur and therefore received $23,282 in maintenance and cure benefits under the April 21 judgment.

The district court's April 21 order also expressly amended its February 7, 1980 judgment to award Harrell interest from the date of the entry of the February 7 judgment instead of awarding him interest from the date of judicial demand.

after the entry of this order, Harrell filed his motion for reconsideration, which the district court subsequently denied on May 22, 1980.

The crucial issue before us is whether Harrell's motion for reconsideration further postponed the commencement of the time period for filing his notice of appeal until after entry of the order denying this motion. If *not,* then Harrell's notice of appeal, filed on June 19, 1980, was clearly untimely, and we would therefore be without jurisdiction to consider it.[2] *Meggett v. Wainwright,* 642 F.2d 95, 96 (5th Cir.1981). We hold, however, for the following reasons, that Harrell's notice of appeal was timely filed.

The granting of Dixon Bay's motion for judgment n.o.v., which set aside that part of the original judgment awarding Harrell damages for Dixon Bay's arbitrary and capricious refusal to pay him maintenance and cure benefits, resulted in the entry of a *new judgment* on April 21, 1980, from which the time for filing a notice of appeal commenced to run anew. *Federal Trade Commission v. Minneapolis-Honeywell Regulator Company,* 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–249, 97 L.Ed. 245 (1952); *Ray v. United States,* 121 F.2d 416, 418 (7th Cir.1941). *Cf. Gila River Ranch, Inc. v. United States,* 368 F.2d 354, 357 (9th Cir. 1966). Confronted for the *first* time with an unfavorable judgment from the district court, Harrell, within ten days after its entry, filed a motion for reconsideration. Although this motion does not recite that it was filed pursuant to Rule 59, we hold that

it was, in effect, "a motion to alter or amend the judgment."[3] *Woodham v. American Cystoscope Company of Pelham, New York,* 335 F.2d 551, 554–55 (9th Cir. 1964); *Richerson v. Jones,* 572 F.2d 89, 93 (3d Cir.1978); *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 811 (9th Cir. 1981); *Dove v. Codesco,* 569 F.2d 807, 809 (4th Cir.1978); *Consor v. Occidental Life Insurance Company,* 469 F.Supp. 1110, 1117 (N.D.Tex.1979). *See also* 9 Moore's *Federal Practice and Procedure* ¶ 204.12[1].

Relying on *Wansor v. George Hantscho Company, Inc.,* 570 F.2d 1202, 1206 (5th Cir.1978), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), and *Dockery v. Travelers Company of Hartford, Connecticut,* 349 F.2d 1017, 1018 (5th Cir.1965), Dixon Bay argues that even if Harrell's motion for reconsideration is considered "a motion to alter or amend the judgment" under Rule 59(e), it could not further postpone the time for filing a notice of appeal. Dixon Bay's reliance on *Wansor* and *Dockery* is, however, misplaced, since each case concerns a motion filed by a party asking the trial court to reconsider the *denial* of that same party's prior *post-judgment* motion to alter or amend the original judgment. *See also Ellis v. Richardson,* 471 F.2d 720, 721 (5th Cir.1973) (appellant's second Rule 59 motion asking the trial court to reconsider the denial of his first Rule 59 motion did not postpone the time for appeal). Here, however, Harrell filed *only one* Rule 59 motion, and after its denial, he filed his notice of appeal within thirty days.[4]

**2.** We note that if Harrell's appeal was untimely, then we would not have jurisdiction of Dixon Bay's cross-appeal, since it too would be untimely filed. *See* Fed.R.App.P. 4(a)(3).

**3.** Rule 59(e) provides that: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Harrell's motion shows that it was served on Dixon Bay by mail on April 27, 1980. Under Rule 25, service by mail is complete upon mailing.

**4.** The instant case is also properly distinguished from *Dixie Sand and Gravel Company v. Tennessee Valley Authority,* 631 F.2d 73, 75 (5th Cir.1980). In *Dixie Sand,* the trial court

granted the defendant TVA's motion for summary judgment on alternate grounds. Appellant then filed a timely motion for reconsideration of the summary judgment. The trial court denied appellant's motion, but amended the judgment to delete its reliance on one of the alternate grounds. Appellant again moved for reconsideration, this time of the amended judgment, which was denied by the trial court. Appellant then filed its notice of appeal. In dismissing the appeal as untimely under Rule 4(a), this Court reasoned that:

"[T]he amended judgment did not rest on a new ground but on one of the two original grounds. Were we to hold that appellant's motion for reconsideration of the amended

The instant case is somewhat analogous to this Court's decision in *Trowel Trades Employees Health and Welfare Trust Fund of Dade County v. Edward L. Nezelek, Inc.,* 645 F.2d 322, 325 (5th Cir.1981). There, the district court's original judgment failed to dispose of a "right-to-work" issue raised at trial. Nezelek timely filed a motion for new trial on this issue. The district court expressly granted a new trial. *Id.* at 325 n. 3. After receiving legal memoranda from both parties, the trial court decided the right-to-work issue against Nezelek and entered a second judgment. Four days later, Nezelek moved for a rehearing, which was denied. Nezelek then filed a notice of appeal within thirty days after its motion for rehearing was denied. Holding that Nezelek's appeal was timely, this Court stated as follows:

> "We find that Nezelek's motion for rehearing extended the time for appeal to 30 days after the district court's ... denial of that motion. Although we have held repeatedly that successive motions ' "of the kind enumerated in Rule 4(a)" ' will not toll indefinitely the prescribed period for filing a notice of appeal, *Dixie Sand & Gravel Co. v. TVA,* 631 F.2d 73, 74 (5th Cir.1980), quoting *Wansor v. George Hantscho Co.,* 570 F.2d 1202, 1206 (5th Cir.1978), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), these holdings do not apply where the district court grants appellant's motion for a new trial on an issue not addressed in the original judgment and the appellant moves for reconsideration after the new trial on that issue, *see* F.R.A.P. 4(a)(4); 9 Moore's Fed. Practice ¶ 204.12[1] n. 7. *The district court did not render judgment based on the right-to-work issue until September 10, and Rule 4(a) allowed Nezelek one opportunity to ask the court to reconsider that judgment."* 645 F.2d at 325 (emphasis added).

In the present case, the district court did not render any judgment *against* Harrell until April 21, 1981, and we hold that Rule 4(a) allowed Harrell, as it did Nezelek, "one opportunity to ask the court to reconsider that judgment."

In 6A Moore's *Federal Practice* ¶ 59.13[4], the treatise states that a party's motion for reconsideration of an order granting its opponent's previous motion to alter or amend the judgment should not further postpone the start of the thirty-day time period for filing a notice of appeal.

> "True the altered or amended judgment is not the same final judgment that was originally entered. But a motion for reconsideration would normally call for a reconsideration of the same issues that led to the alteration or amendment; and the party moving for reconsideration had his day in court when resisting the motion to alter or amend. In the interest of finality, relief, if any, from the altered or amended judgment should come by appeal ...." (Footnotes omitted.)

We respectfully disagree. An altered or amended judgment may often be legitimately attacked on grounds as to which the complaining party has not had "his day in court when resisting" the original post-judgment motion. An example is when the trial court changes its mind, after the original judgment, on the legal significance of the jury's answer to one of several special issues submitted under Rule 49(a), and in response to a motion proceeds to render an

---

judgment terminated the running of the time for filing notice of appeal, a party aggrieved by a judgment resting on several grounds could extend the time for appeal virtually indefinitely by filing successive motions for reconsideration challenging each of the grounds *seriatim.*" 631 F.2d at 75 (footnote omitted).

In *Dixie Sand* the "amendment" of the judgment made no change in what the judgment *did* —the original summary judgment denied plaintiff *all* relief, and so also did the amended judgment. *Dixie Sand* would also be more analogous if Dixon Bay, after successfully obtaining a judgment n.o.v., as it did respecting the $28,910 award against it for arbitrary and capricious refusal to furnish maintenance and cure in the February 7 judgment, had filed a motion for reconsideration of the April 21, 1980 judgment requesting that the April 21 judgment's award of $60,000 against it on the negligence and unseaworthiness claim, the same award as made on that claim in the February 7 judgment, be set aside.

amended judgment in favor of the party against whom the original judgment was entered. The losing party in the amended judgment then files a motion for new trial, directed to the amended judgment, on the ground the court erred in admitting improper evidence, or allowing improper jury argument, which probably influenced the jury to find as it did on the particular special issue in question. Such a motion for new trial directed to an amended judgment presents matters as to which the party filing it has not had "his day in court when resisting" his opponent's motion to amend the original judgment. On the other hand, frequently a Rule 4(a)(4) motion directed to an original judgment will nonetheless present matters as to which the movant has already had "his day in court," such as a motion for judgment n.o.v. presenting the same grounds as a previously denied motion for directed verdict made at the close of all the evidence.

More significant, however, is the fact that Harrell's motion for reconsideration fits within the literal wording of Rule 4. The Rule provides that the post-judgment motions enumerated therein may be filed by "any party."[5] And nothing in Rule 4 limits the suspensive effect of these post-judgment motions, with regard to the time prescribed for filing a notice of appeal, to those directed to the original judgment. On the contrary, Rule 4 speaks only of "the judgment" or "order appealed from." The only judgment Harrell seeks to appeal from, or has any reason to appeal from, is the amended judgment entered April 21. That judgment was plainly substantively different, in a manner adverse to Harrell, from the original February 7 judgment.

We think that generally a test, which looks to whether the amended judgment substantively changes the last prior judgment in a manner adverse to the party seeking to time his notice of appeal from the denial of his Rule 4(a)(4) motion directed to the amended judgment, better comports with the wording and purposes of Rule 4 than does either a test which looks to whether that party has, prior to the amended judgment, already "had his day in court" on the issues raised by his motion, or a test which simply disregards *all* amended judgments. Certainly, a test of the nature here suggested does not raise the specter of indefinite delays by successive motions, as for these purposes only the initial order overruling a party's initial motion directed to a particular judgment is considered, and the number of judgments is, of course, controlled by the trial court. Any danger of "manipulation" by the trial court is mitigated by the requirement that the amended judgment substantively change the last prior judgment in a manner adverse to the party seeking to time his appeal from the denial of his Rule 4(a)(4) motion directed to the amended judgment.

In sum, we do not think that the wording or purposes of Rule 4, or the interests of finality, are contravened or subverted by allowing Harrell one opportunity to have the thirty-day time period for filing his notice of appeal postponed while the district court considered his single, timely motion to alter or amend the only adverse judgment ever rendered against him in this case.

### III.

Turning to the merits of Harrell's appeal, upon review of the record, we agree with the district court that there is legally insufficient evidence, under the standard set forth in *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir.1969), that Dixon Bay arbitrarily and capriciously refused to pay Harrell additional maintenance and cure benefits, particularly in view of the uncontroverted evidence that the officials of Dixon Bay stopped making maintenance and cure payments to Harrell in reliance on the advice and opinions of his initial treating physicians, and that Harrell did not inform Dixon Bay of his priapismic condition, or of

---

**5.** *Cf. Boggs v. Dravo Corp.,* 532 F.2d 897, 900 (3d Cir.1976) ("The 'party' terminology employed [in Rule 4] was never intended to operate as a restrictive rule limiting those who could bring a motion which would have the effect of terminating the time for appeal").

his visits to other physicians for treatment of it, or of his neck and back problems, until he filed suit against Dixon Bay several years later. *See Neveaux v. Lykes Brothers Steamship Co., Inc.,* 476 F.2d 177 (5th Cir.1973); *Hudspeth v. Atlantic & Gulf Stevedores, Inc.,* 266 F.Supp. 937, 945 (E.D. La.1967).

■ As to Dixon Bay's cross-appeal, the writer of this opinion questions Dixon Bay's right to appeal, after having paid Harrell the amount of the final judgment rendered against it.[6] However, the other members of this panel feel that, though Dixon Bay may maintain its cross-appeal, it is nonetheless without merit, since there is sufficient evidence to support the jury findings holding Dixon Bay liable for damages, and for maintenance and cure (as reduced by the remittitur), based on Harrell's personal injuries. No useful point would be served in discussing the evidence on these issues, as no significant legal question, or matter of potential precedential value, is presented. *Cf.* Local Rule 47.6.

The district court's judgment is therefore affirmed.

AFFIRMED.

---

**6.** Payment was made simply to stop the running of interest, and apparently not in response to a demand for payment or to avoid levy of execution or because of inability to post supersedeas bond; it was made to plaintiff and/or his attorneys, rather than being deposited in the registry of the court; and apparently the payment was not expressly conditioned. *See Ferrell v. Trailmobile, Inc.,* 223 F.2d 697, 698 (5th Cir.1955) (payment of a judgment cuts off the payer's right of appeal when such payment shows an intention to abide by the judgment). *See also Leader Clothing Company v. Fidelity and Casualty Company of New York,* 227 F.2d 574, 576 (10th Cir.1955); *Woodson v. Chamberlain,* 317 F.2d 245, 246 (4th Cir.1963) (where repayment or restitution cannot be obtained in the event of a reversal, an appeal will be barred). The observations in this footnote are all those of the writer of this opinion alone.