James BREESE, Jr.,
Plaintiff-Appellant Cross-Appellee,

v.

AWI, INC., Defendant-Appellee
Cross-Appellant.

No. 86–3607
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 30, 1987.
Rehearing Denied Sept. 14, 1987.

Ronnie C. Penton, Jesse L. Wimberly, III, Slidell, La., for plaintiff-appellant cross-appellee.

Wood Brown, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for defendant-appellee cross-appellant.

Before RANDALL, HIGGINBOTHAM and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

James Breese, Jr., a disabled seaman, appeals the district court's determination that he was not entitled to recover attorney's fees and punitive damages from AWI, Inc., for AWI's purported bad faith failure to pay him maintenance and cure following his heart attack. Because we agree with Breese that AWI's investigation of his claim for maintenance and cure was impermissibly lax, we reverse the judgment of the district court and remand for a determination of the appropriate amount of attorney's fees and punitive damages to be awarded to Breese. In all other respects, we affirm the judgment of the district court.

## I.

On December 1, 1984, Breese, a 67 year-old cook, suffered a heart attack aboard a workover barge owned by AWI. Breese was evacuated from the barge and taken to West Jefferson Hospital, where he remained until December 14, 1984, under the care of Dr. Charles Steiner.

Breese's condition was investigated by Lionel Hemard, AWI's safety director, whose job it was to investigate compensation claims made by injured employees of AWI. Hemard visited Breese in the hospital, but did not request any of Breese's medical records and apparently did not speak to Dr. Steiner. In determining the type and amount of compensation due Breese, Hemard contacted counsel for AWI, who informed Hemard that, in heart attack cases, maximum cure is generally reached upon discharge from the hospital, and that therefore Breese was not due maintenance payments.

Breese was covered by a health insurance policy issued by Massachusetts Mutual Insurance Company, of which AWI paid 73 percent of the premiums and Breese paid the remainder. The policy provided for a 20 percent co-insurance payment by the insured. This insurance policy terminated on August 31, 1985, but, by its terms, extended for 12 months beyond that date if the insured was totally disabled. For some reason, however, some of Breese's medical bills went unpaid. It was apparently AWI's understanding that they would pay only the deductible on Breese's claims, and that Breese's insurance would pay the remainder. Hence, AWI forwarded any medical bills that it received to Breese. Breese testified that he gave the medical bills to his attorney. Breese's attorney testified that, although he received the bills, he did not forward them to AWI.

Hemard informed Breese that no maintenance would be paid and that Breese's insurance would pay his medical expenses.

The district court found that Breese, who was unable to engage in any type of employment following his heart attack, made four efforts to contact AWI concerning his entitlement to some sort of benefits other than insurance. One of these calls resulted in AWI sending Breese a check for $400 as an advance. Some other payments of maintenance were made to Breese post-trial.

On May 6, 1985, Breese brought this action in the United States District Court for the Eastern District of Louisiana. Breese sought damages under the Jones Act and general maritime law. Prior to trial, however, Breese dismissed these claims and sought only maintenance, cure, attorney's fees, and punitive damages. After a bench trial, the district court awarded Breese maintenance for three months following his discharge from the hospital, cure up until that time, and costs. The district court held that AWI would be entitled to set-off against its liability for cure 73 percent of any payments made under Breese's health insurance policy, of which AWI paid 73 percent of the premiums.

Finally, and of primary importance to this appeal, the district court concluded that Breese was not entitled to recover punitive damages and attorney's fees from AWI because of AWI's failure to pay maintenance and cure. The district court found that, in failing to pay maintenance, AWI relied in good faith on the reasonable opinion of its counsel that its liability for maintenance terminated when Breese left the hospital. Hence, the district court held that AWI's conduct with respect to Breese's maintenance and cure claim was not egregious enough to demonstrate a "callous disregard" for Breese's rights, and therefore did not justify an award of punitive damages. On July 29, 1986, judgment was entered to this effect. On August 18, 1986, Breese filed a timely notice of appeal to this court. On August 28, 1986, AWI filed its notice of appeal.

On appeal, Breese argues only that the district court erred in concluding that Breese was not entitled to punitive damages and attorney's fees. Breese argues that AWI's reliance on advice of counsel in deciding that it had no obligation to pay maintenance is insufficient to insulate it from liability for punitive damages. Breese suggests that if this court allows the district court's decision to stand, shipowners will be able to escape liability for attorney's fees and punitive damages for their failure to pay maintenance and cure by simply finding an attorney who will render a legal opinion that no maintenance or cure is due. Breese argues that this, in turn, will result in shipowners refusing to pay maintenance and cure until ordered to do so by a court, since the seaman could not obtain additional damages because of the shipowner's failure to pay.

In response, AWI argues that it never refused to pay cure, only maintenance, and that the only reason that Breese's medical bills were not paid by AWI is because counsel for Breese failed to forward these bills to AWI. On the issue of its failure to pay maintenance, AWI argues that it undertook a reasonable investigation of Breese's claim and obtained the advice of counsel before denying Breese's claim, and therefore its conduct was not sufficient to support an award of attorney's fees or punitive damages. AWI abandoned its cross-appeal, concluding that the district court's conclusion that AWI was entitled to set-off sums paid to Breese under the insurance policy to the extent of AWI's contribution to the policy premium was reasonable. Hence, the only issue presented for decision by this court is whether the district court erred in concluding that Breese was not entitled to an award of punitive damages and attorney's fees. Before considering that issue, we will set out the appropriate standard of review.

## II.

In cases challenging the district court's conclusion that a seaman was or was not entitled to an award of punitive damages and attorney's fees for the willful failure of his employer to pay maintenance and cure, this court has held that the decision to impose such sanctions is committed to the sound discretion of the district court.

*Harrell v. Air Logistics, Inc.*, 805 F.2d 1173, 1174–75 (5th Cir.1986). A district court's factual findings underlying its conclusion of whether the failure to pay maintenance and cure was arbitrary and capricious are, like other factual findings, reviewed under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). *Dowdle v. Offshore Express, Inc.*, 809 F.2d 259, 264 (5th Cir.1987); *Harrell*, 805 F.2d at 1175. Hence, our inquiry is twofold. First, we inquire whether the district court's findings that AWI's conduct in investigating Breese's claim was not callous or arbitrary and capricious was clearly erroneous. Second, we inquire whether the district court's failure to award punitive damages and attorney's fees amounted to an abuse of discretion.

### III.

It is well-settled that "[a] shipowner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees." *Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555, 558 (5th Cir. 1986). It is also clear that awards of punitive damages and attorney's fees in cases involving the failure to pay maintenance and cure are grounded on the same standards. "Both awards must be grounded on the same type of egregious shipowner conduct exhibiting wanton and intentional disregard of a seaman's rights." *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 88 (5th Cir.1984). What is not so settled, however, is the type of conduct on the shipowner's part that will entitle a seaman to punitive damages and attorney's fees.

> Conduct that gives rise to damages for the termination of maintenance and cure has been characterized as "callous and recalcitrant," "arbitrary and capricious," and "willful, callous, and persistent." Laxness in investigating a claim that would have been found to have merit has been found to meet the standard, as has a finding that the employer had "no reasonable excuse" for its refusal.

*Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir.1984). Subsequent cases in this circuit have added to the type of conduct that will subject a shipowner to liability for punitive damages and attorney's fees. *See, e.g., Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) ("arbitrary and willful"); *Harper*, 741 F.2d at 90 ("egregious or wanton").

Each case is to be evaluated on its own facts. However, "[t]he cases in which punitive damages or attorney's fees have been granted share the common element of a shipowner's default, either in failing to provide maintenance and cure or in failing to investigate an injured seaman's claim." *Harper*, 741 F.2d at 89–90 (collecting cases).

> Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically.

*Tullos*, 750 F.2d at 388. Other cases have found employer conduct not to merit an award of punitive damages and attorney's fees. *See, e.g., McWilliams v. Texaco, Inc.*, 781 F.2d 514, 519–20 (5th Cir.1986) (affirming directed verdict in favor of employer on issue of punitive damages when employer refused to pay maintenance until provided with reasonable documentation of same); *Harrell v. Dixon Bay Transp. Co.*, 718 F.2d 123, 129–30 (5th Cir.1983) (affirming judgment n.o.v. on the issue of punitive damages and attorney's fees in favor of employer who ceased maintenance and cure payments on the advice of seaman's treating physicians).

Recent cases from this court have read these decisions as requiring a showing of bad faith on the part of a shipowner to support an award of punitive damages or attorney's fees. "[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper*, 741 F.2d at 90; *see also Tullos*, 750 F.2d at 388 (noting *Harper's* "bad faith" requirement).

Finally, "ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n. 2 (5th Cir. Jul. 1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

■ Although "[n]o bright line separates the type of conduct that properly grounds an award of punitive damages—a shipowner's willful and callous default in its duty of investigating claims and providing maintenance and cure—from the type of conduct that does not support a punitive damages award," *Harper*, 741 F.2d at 90, it is clear that laxness in investigating a claim that would have been found to be meritorious will subject a shipowner to liability for attorney's fees and punitive damages. *Tullos*, 750 F.2d at 388; *Holmes*, 734 F.2d at 1118. We think that AWI's investigation of Breese's claim in this case, which did not include an inquiry of any physician (much less Breese's treating physicians) or a review of any of Breese's medical records, was impermissibly lax under any reasonable standard, rendering AWI's decision not to pay maintenance and cure beyond Breese's discharge from the hospital arbitrary and capricious. "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum *medical* recovery." *Vaughn v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962) (emphasis supplied). Hence, " '[i]t is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure.' " *Tullos*, 750 F.2d at 388 (quoting *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1st Cir.1980)); *cf. Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 n. 2 (5th Cir.1985) (testimony of seaman's treating physician that he had discharged seaman to return to work sufficient to support a jury finding of maximum cure).

In *Tullos*, we held that, where a shipowner had relied on the opinion of its own physician (who had examined the seaman) to terminate maintenance payments in the face of conflicting medical opinions on the issue of whether maximum cure had been reached, a jury question was raised as to whether such behavior would entitle the seaman to punitive damages. We concluded that such behavior on the part of the shipowner "may *not* be arbitrary and capricious, but there is sufficient evidence entitling [the seaman] to have the jury resolve his arbitrary and capricious claim." *Id.* at 389 (emphasis in original). The facts *sub judice* obviously present a much more compelling situation for the award of punitive damages, in that AWI did not even bother to obtain *any* medical opinion on Breese's condition, but merely sought the advice of counsel, who was himself unadvised as to Breese's medical condition. Such an "investigation" compels a finding that the denial of maintenance was arbitrary and capricious, and the district court's conclusion to the contrary is clearly erroneous.

■ The district court concluded that AWI's good faith reliance on the reasonable opinion of counsel that AWI need pay no maintenance constituted a sufficient investigation to insulate it from liability for attorney's fees and punitive damages. In so concluding, the district court relied upon this court's decision in *Harrell v. Dixon Bay Transp. Co.*, 718 F.2d 123 (5th Cir. 1983). In *Harrell*, this court affirmed the district court's grant of judgment n.o.v. on the issue of punitive damages and attorney's fees in favor of a shipowner who had ceased making maintenance and cure payments to a seaman on the advice of the seaman's treating physicians that the seaman had reached maximum cure. *Id.* at 129. We think that *Harrell* presented a vastly different situation from the case *sub judice*. First, as noted above, the question of whether a seaman is entitled to maintenance turns on whether the individual seaman has reached maximum cure. This is a medical question, not a legal one; and therefore reliance on the advice of counsel, as opposed to the advice of a physician, is insufficient to constitute a reasonable investigation of a seaman's right to maintenance and cure in the situation where coun-

sel is not advised as to the seaman's medical condition. In this respect, we note that there is no evidence in the record that AWI's counsel reviewed Breese's medical records or himself consulted Breese's treating physicians prior to rendering his advice. Furthermore, in *Harrell*, the seaman had failed to inform the shipowner of his condition or of his visits to physicians, and had made no demand for maintenance prior to filing suit. *Id.* In contrast, in the case *sub judice*, the district court found that Breese made four attempts to contact AWI concerning the receipt of some type of benefits in addition to insurance. Hence, we find *Harrell* inapplicable to this case and therefore conclude that the district court's reliance on it was misplaced.

◼ Finally, AWI argues, and the district court implied, that Hemard's visits to Breese in the hospital to ascertain his condition constituted an "investigation" by AWI in addition to AWI's seeking the opinion of counsel. Hemard testified that when Breese was initially admitted to the hospital, Hemard spoke to a variety of hospital personnel and to Breese himself in an attempt to ascertain Breese's condition. However, in response to questioning on direct examination, Hemard testified that he could not supply the names of any personnel that he spoke with and did not recall whether he spoke to any of Breese's treating physicians. He further testified that he did not ask any doctors whether Breese had reached maximum cure or when he would be expected to reach maximum cure. We think that this investigation, if it can be called such, was also inadequate. If AWI's attorney, who was not a physician and who failed to consult with Breese's treating physicians or review any medical records, was not qualified to render an opinion on whether Breese had reached maximum cure, it is difficult to understand how Hemard, who was also not a physician and who also failed to consult Breese's physicians or review Breese's medical records, would be so qualified. Hence, we reject any argument that the investigation undertaken by Hemard was adequate.

Because the investigation of Breese's right to maintenance and cure conducted by AWI was unreasonably lax, and the resulting decision to deny Breese maintenance and cure was arbitrary and capricious, the district court abused its discretion in failing to award Breese attorney's fees and punitive damages. Hence, we reverse that part of the judgment of the district court denying Breese attorney's fees and punitive damages, and we remand for a determination by the district court of the proper amount to be awarded. Since this is the only issue raised by the parties on appeal, we affirm the judgment of the district court in all other respects.

### IV.

For the above reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and this case is REMANDED for further proceedings consistent with this opinion. Costs will be borne by AWI.