Ruth GILCHRIST, Michelle Gosneigh and
James Rouse, Plaintiffs,

v.

William BOLGER, Postmaster General of
the United States Postal
Service, Defendant.

Civ. A. No. 179–024.

United States District Court,
S. D. Georgia,
Augusta Division.

Feb. 18, 1981.

John H. Ruffin, Jr., Augusta, Ga., for plaintiffs.

Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Barbara Fredericks and David Karro, Washington, D. C., for defendant.

ORDER

BOWEN, District Judge.

In this Title VII action pursuant to section 717, 42 U.S.C. § 2000e–16, named plaintiffs assert individual and class action allegations of employment discrimination by the United States Post Office in Augusta, Georgia. Plaintiffs Gilchrist and Rouse are ethnically identifiable as black. Gosneigh asserts that she is ethnically identifiable as Eurasian. Their respective individual claims are as follows: (1) plaintiff Gilchrist, an employee at the Augusta, Georgia, Post Office as a letter sorting machine operator, avers that, despite her qualifications, defendant has failed and refused to promote her on the basis of race; (2) plaintiff Rouse, an employee at the Augusta, Georgia, Post Office as a letter sorting machine operator, avers that, despite his eligibility and qualifications, defendant has refused his request for on-the-clock training in Mail Classification on the basis of race; and (3) plaintiff Gosneigh avers that she was terminated as an employee at the Augusta, Georgia, Post Office on the basis of race.

In support of the class action allegations, plaintiffs assert the following in paragraph 18 of their complaint:

> The Augusta, Georgia, Post Office continues to hire and promote blacks and other minorities on a basis and in a manner which is purposely used to discriminate against blacks and other minorities based upon race,

and the following in paragraph 19 of their complaint:

> The Augusta, Georgia, Post Office has in the past, and continues to assign, compensate and promote blacks and other minorities in a manner which discriminates against blacks and other minorities.

Defendant has moved to dismiss the class action allegations of plaintiffs' complaint and in opposition to plaintiffs' motion to certify the class.

On April 18, 1980, plaintiffs moved to certify this action as a class action. Fed.R.Civ.P. 23(c)(1). Plaintiffs seek to define the class as consisting of "all past and future applicants and present employees of the Augusta, Georgia, Post Office who have been, are being or will be exposed to racial discrimination in violation of Title VII of the Civil Rights Act of 1964." By motion supported by several briefs, defendant opposes class certification on the following grounds: (1) commonality and typicality requirements are not satisfied in that plaintiffs have made no showing of general employment discrimination practices by defendant so as to warrant class action relief and that the representative plaintiffs do not have a sufficient nexus with the purported class members; and (2) the numerosity requirement is not met.

In resolving a motion for class certification, the Court must determine whether all four prerequisites of Fed.R.Civ.P. 23(a) are met and whether at least one of the three genres of class suits prescribed in Rule 23(b) is present. *See generally* 3B *Moore's Federal Practice Manual* ¶ 23.50 (2d ed. 1980). Such a determination rests within the considered discretion of the district court. The question is ordinarily procedural and does not reach the merits of the case. *Cruz v. Hauck*, 627 F.2d 710 (5th Cir. 1980); *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980). *But cf. Shepard v. Beaird-Poulan, Inc.*, 617 F.2d 87, 90 (5th Cir. 1980) ("adjudicated lack of merit of the [class representative's] individual claim is a proper factor in determining whether a continuing nexus within the class exists). *See Guerine v. J & W Inv., Inc.*, 544 F.2d 863 (5th Cir. 1977). The burden of proof on the propriety of class certification rests with the proponent of the class. *Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975).

A central issue raised by defendants, in challenging plaintiffs' satisfaction of commonality and typicality requirements is that named plaintiffs have not demonstrated a sufficient "nexus" between their indi-

vidual status and the status of the putative class members to show the existence of a homogeneous class. Of course, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). The nexus requirement is often couched in terms of "standing" in an "extra-constitutional sense, . . . as legal shorthand for one or more of the prerequisites set forth in Rule 23(a)," *Moore's, supra* ¶ 23.04[2], at 23–128, ordinarily typicality and commonality.[1]

The Fifth Circuit has applied the nexus requirement liberally in employment discrimination cases, adopting a policy favoring "across the board" Title VII class actions. *See Satterwhite v. City of Greenville,* 578 F.2d 987, 993 n.8 (5th Cir. 1978) (en banc), *vac. and remanded on other grounds,* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980) ("it is not necessary that the representative suffer discrimination in the same way as other class members, but it is necessary that she suffer from the discrimination in some respect."); *Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969). As recently stated by Judge Tuttle, "this Court [the Fifth Circuit] permits an employee complaining of one employment practice to represent another complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury." *Falcon v. General Telephone Co.,* 626 F.2d 369, 375 (5th Cir. 1980). *See also Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895 (5th Cir.), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). This liberal policy reflects the pervasive judicial concern in the Fifth Circuit that the congressional purposes embodied in Title VII be given full force and effect. *See Long, supra,* 502 F.2d at 43. The attitude is manifest in Judge Godbold's comments that:

> racial discrimination, which is by definition class discrimination, is a particularly virulent form of employment discrimination, because it is generally both subtle and pervasive. We have applied a broad approach to standing, stressing the individual's role as private attorney general taking on the mantle of the sovereign.

*Huff v. N. D. Cass Company of Alabama,* 485 F.2d 710, 713 (5th Cir. 1973).

Against this backdrop, then, the Court must decide whether the named plaintiffs have demonstrated a sufficient "nexus" with the putative class and its interests to enable them to serve as class representative, or, more precisely, whether the commonality and typicality prerequisites of Rule 23(a) have been met.

*Commonality*

The Rule 23(a)(2) commonality requirement "does not require that all questions of law and fact be identical, but rather that a question of law or fact be presented that inheres in the complaints of all the class members." *Cooper v. University of Texas at Dallas,* 482 F.Supp. 187, 191 (N.D. Tex.1979). Normally in Title VII cases the "common question" is whether discrimination was practiced by the defendant with respect to the putative class. *See Moore's, supra* ¶ 23.06–1, at 23–175. Plaintiff's bur-

1. All the requirements of Rule 23(a) overlap allowing the use of such umbrella terminology as "nexus." A structured analysis under Rule 23(a) was suggested by Professor Moore:

> Subpart (a)(1) focuses the judge and lawyers on the question "WHO ARE THE PROPOSED CLASS" and requires that they be identifiable and their relationship to possible joinder be impracticable. Subpart (a)(2) focuses on "WHAT ARE THE CLAIMS OF THE CLASS" and requires a commonality of relationship between these claims. Assuming (a)(1) and (a)(2) are met, subpart (a)(3) now looks to the question. "WHAT IS THE INDIVIDUAL CLAIM OF THE CLASS REPRESENTATIVE" and requires that it have the essential characteristics common to the claims of the class. Then subpart (a)(4) looks to all facts relating to "WHO IS THE REPRESENTATIVE" and requires that he adequately represent the claims of the class.

*Moore's, supra* ¶ 23.06–2, at 23–191 to –192 (footnote omitted).

den of proof to demonstrate the existence of this common question entails more than the simple assertion of its existence, but less than a prima facie showing of liability. As Judge Higginbotham has commented: "It is clear that the plaintiff must make some showing from which the court may draw an *inference of discrimination*, although the courts have yet to articulate precisely where between these two extremes [i.e. between simple assertion and prima facie showing] the plaintiff must place her [or his] proof." *Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 79 (N.D.Tex. 1979). Thus, with respect to the putative class members, such as employees, former employees and applicants, plaintiffs must make some showing from which the Court may draw the inference that those members have suffered discrimination.

By way of deposition testimony, named plaintiffs have shown that complaints of racial discrimination are shared by other black employees and former employees of the United States Post Office, Augusta, Georgia. While such testimony does not make out a prima facie case of class wide discrimination by defendant, it does at least raise an inference of discrimination beyond that individually asserted by the named plaintiff. Although different employee classifications and varied specific allegations of discrimination may be involved, this is not necessarily fatal to a finding of commonality. *See Vuyanich v. Republic National Bank of Dallas*, 82 F.R.D. 420, 431 (N.D.Tex.1979) (fact that discrimination may manifest itself in a variety of contexts including promotions, job classifications, training, and pay, does not detract from commonality). Thus, a question of fact common to the complaints of the named plaintiffs and the employee former-employee putative class members is whether defendant engaged in discrimination on the basis of race.

With respect to the applicant putative class members, however, plaintiffs have not made a similar showing. The Court can discern nothing in the pleadings or discovery on file which would justify an inference that applicants at the Augusta Post Office have been the victims of discrimination. Without such an inference, the commonality requirement—the common question of discrimination—is not satisfied. As noted earlier, the simple assertion that applicants have suffered discrimination in common with the named plaintiffs is insufficient under Rule 23(a)(2).

*Typicality*

Rule 23(a)(3) typicality necessitates examination of the individual claims of the class representatives. "It requires a determination of whether, given the fact that the representative raises some question of law or fact that is common to the class, the remaining issues and possible defenses are also typical." *Quigley, supra*, 85 F.R.D. at 82–83. This subpart of Rule 23(a) has been described as a double schizophrenic:

> the (a)(3) requirement draws one element from (a)(2), i.e. the commonality of the claims of the class members, and one element from (a)(4), i.e. the nature of the representative's claim, and requires that the (a)(4) element, i.e. the representative claim, be 'typical' of the (a)(2) element, i.e. the common claims of class members.

*Moore's supra* ¶ 23.06–2, at 23–192.

Defendant argues that the claims of the named plaintiffs, if true, are unique, in that "each instance involved an employment decision based on a particular plaintiff's employment history and a unique factual occurance [*sic*] (e.g., plaintiff Gilchrist's non-selection for the Customer Service job because of the unique qualifications of the job and/or her allegations of poor evaluations from a particular supervisor.)" *Defendant's Supplemental Brief*, at 6. Defendant further asserts that "[t]he specific claims upon which this complaint are based are clearly individual instances of discriminatory treatment focusing on unconnected alleged incidents of discriminatory discipline, harassment and evaluation by individuals in positions of authority." *Id.* at 5.

As discussed earlier, and as summarized by the district court in *Cooper, supra*: "[T]he purpose of Title VII and the Fifth

Circuit's repeated endorsement of across-the-board representation mandate [] the conclusion that a plaintiff complaining of one employment practice can represent an employee complaining of a different employment practice." 482 F.Supp. at 192. Thus, although the alleged discriminatory animus may manifest itself in distinct ways (e.g. discipline, harassment, and evaluation), this does not of itself render the claims of the representatives less typical than the claims of the putative class members, in the context of Rule 23(a)(3), when the common complaint is racial discrimination. *See Falcon v. General Telephone Co.*, 626 F.2d 369 (5th Cir. 1980) (named plaintiff complaining of discrimination on the basis of national origin in promotion permitted to represent a class consisting of employees and applicants who alleged discrimination because of similar national origin); *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895 (5th Cir.), *cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978) (named plaintiffs complaining of employment practices permitted to represent class of persons injured by employer's college degree requirement even though plaintiffs themselves were not harmed by this requirement); *Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 83 (N.D.Tex.1979) ("the typicality requirement does not preclude a class that includes pre-trainee applicants as well as trainees"); *Ligon v. Frito-Lay, Inc.*, 82 F.R.D. 42 (N.D. Tex.1979) (female applicant for "exempt" position complaining of discrimination through the use of a male dominated subjective review system entitled to represent a class consisting of all past, present, and future female applicants and all past, present and future employees); *Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979) (unsuccessful female applicant for teaching position claiming sex discrimination permitted to represent class including female applicants and employees).

The above-cited cases, applying the Fifth Circuit policy favoring across-the-board representation in Title VII actions, reveal that a named plaintiff need not suffer an identical harm, in the same fashion, from the same particular kind of discriminatory practice, as the putative class members, provided commonality exists, for the typicality requirement to be satisfied. *See Vuyanich, supra*, at 433 & n.8 (comparing the Fourth Circuit's contrary approach, as demonstrated in *Hill v. Western Electric Co.*, 596 F.2d 99 (4th Cir. 1979), with the Fifth Circuit's view). To say, as defendant apparently argues, that a named plaintiff and the putative class members, in an action alleging racial discrimination, must assert the same factual claim, is to confuse the requirements of Article III standing and Rule 23. *See Cooper, supra*, 482 F.Supp. at 190–191. Of course, the individual named plaintiffs must suffer an injury in fact, and thus satisfy Article III standing in their own right; however, their status as class representatives is determined by Rule 23, not whether they would have an interchangeable standing (i.e. the same injury in fact) with the class members. The proper analysis was set forth by the *Vuyanich* court:

> In a class action, ... the trial court initially must address whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class. The trial court generally need not address the final question of whether the class itself, after certification, has standing.

82 F.R.D. at 429.

In light of the special favor accorded a finding of typicality in Title VII across-the-board actions, and on the basis of the pleading and discovery on file, this Court concludes that, at least with respect to employees and former employees, the requirement of Rule 23(a)(3) is satisfied in this case.

*Adequacy of Representation*

A separate argument against certification advanced by defendant is that the named plaintiffs will not fairly and adequately represent the class. The Rule

23(a)(4) adequacy of representation requirement invokes due process considerations since a final judgment is ordinarily binding on the class. Analysis under Rule 23(a)(4) focuses on the competency of the attorney for the named plaintiffs and the similarity of interests between the class representatives and the class members. *See generally* 7 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1765–1769.

With respect to counsel for named plaintiffs, the Court notes that Mr. Ruffin is diligent and experienced in Title VII litigation. The technical competence of counsel is not questioned. However, "lack of congruence among the interests of the class representatives and the class members may render the attorney, despite his diligence, unable to counsel the class members and the plaintiffs fully and fairly." *Vuyanich, supra,* 82 F.R.D. at 434. The traditional approach in judging the adequacy of the representative, as opposed to his attorney, has been to consider:

> (1) whether the interest of the named party is coextensive with the interests of the other members of the class; (2) whether his interests are antagonistic in any way to the interests of those whom he represents; (3) the proportion of those made parties as compared with the total membership of the class; (4) any other facts bearing on the ability of the named party to speak for the rest of the class.

*Moore's supra,* ¶ 23.07[1], at 23–203; *see also In Re South Central States Bakery Products,* 86 F.R.D. 407, 417 (M.D.La.1980) ("The test of adequate representation is whether the representative has a sufficient interest in, and nexus with, the class to insure vigorous prosecution of the action.").

Defendant contends that plaintiffs have failed to demonstrate that a purported class consisting of managerial-supervisory employees and non-supervisory employees as well as applicants for employment is sufficiently conflict free to warrant certification. The gist of this argument is that non-supervisory employee named plaintiffs do not possess interests coextensive with the interests of supervisory employees and applicants to the extent that antagonistic legal and factual interests between these groups predominate.

Initially, it should be noted that "[t]he fact that plaintiffs are members of the same race as the other employees and rejected job applicants whom they seek to represent in a class action is not enough in itself to require a finding under Rule 23 that their representation [is] adequate." *Crawford v. Western Elec. Co., Inc.,* 614 F.2d 1300, 1304 (5th Cir. 1980). This axiom is apparent in *Wells v. Ramsay, Scarlett & Co., Inc.,* 506 F.2d 436 (5th Cir. 1975), in which Judge Bell affirmed a denial of certification, holding that a black foreman who supervised longshoremen could not represent a class consisting of black nonsupervisory longshoremen. A similar conclusion must follow in this case. All named plaintiffs either are or were employees in a non-supervisory capacity; the proferred deposition testimony of putative class members reveals that they are similarly situated. Plaintiffs have made no showing that their interests in prosecuting this action are coextensive with those of supervisory employees. In light of the *Wells* decision, any certifiable class with plaintiffs as named representative would necessarily exclude supervisory personnel.

Defendant also maintains that a conflict of representation exists between named plaintiffs and any class of applicants for employment at the Augusta Post Office. Defendant finds support for this position in the recent dictum of the Supreme Court in *General Telephone Co. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In *General,* Justice White commented by way of illustration that: "In employment discrimination litigation, conflicts *might* arise, for example, between employees and applicants who were denied employment and who will if granted relief, compete with employees for fringe benefits or seniority." *Id.* at 331, 100 S.Ct. at 1707 (emphasis added).

Justice White's comments were conditional in tone: if the aforesaid conflicts exist, then the same named plaintiff could not represent both groups. The statement is not discordant with the long line of cases in this circuit, most recently ending with *Falcon v. Telephone Co.* as earlier cited, holding that a named plaintiff employee, in a Title VII action, could represent a class consisting of applicants as well as employees or vice versa provided the other requirements of Rule 23(a) are met. More significantly, there has been no showing in this case that antagonistic interests exists between the named plaintiffs and applicants for employment. As stated by the district court in *In re South Central States Bakery Products, supra*: "A naked allegation of antagonism cannot defeat class certification; there must be an actual showing of a real probability of a potential conflict which goes to the subject matter of the suit." 86 F.R.D. at 418 (citing *inter alia First American Corp. v. Foster*, 51 F.R.D. 248, 250 (N.D.Ga.1970)). Thus, on the basis of the pleadings and discovery on file, the representative plaintiffs do not appear to have interest intolerably antagonistic to the interests of the applicant members of the putative class. Of course, this finding does not of itself warrant certification of a class consisting of applicants and employees. *See* discussion of commonality, *supra.*

*Numerosity*

A final argument urged by defendant is that plaintiffs have not met the numerosity requirement of Rule 23(a)(1). Under subpart (a)(1):

> The basic question is practicability of joinder, not number of interested persons per se. Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.

*Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). *See generally Moore's, supra* ¶¶ 23.-05[1]–23.05[3]. The burden is on the plaintiff to "show some evidence or reasonable estimate of the number of class members." *Id.* ¶ 23.05[3], at 23–161.

In answers to interrogatories, plaintiff stated that the number of members of the class is "in excess of 40." Presumably, this estimation includes applicants and supervisory employees which the Court has now excluded from class membership for failure to satisfy one of the Rule 23(a) requirements. Moreover, since the date of the earliest administrative complaint filed by a named representative was June 5, 1977, the class must further be limited to employees or former employees with claims of discrimination occurring no earlier than 30 days prior to June 5, 1977.[2]

Within this framework for putative class membership, the Court must determine the practicability of joinder. Initially, the Court notes that, while the factual claims of the named plaintiffs and class members need not be identical, "the only issues that may be raised [in a class action] are those issues that were raised by representative parties in their administrative complaints, together with those issues that may reasonably be expected to grow out of the administrative investigation of their claims." *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, at 372. Here, the issues which emerge from the administrative complaints of the named plaintiffs, as well as the deposition testimony on file, relate to allegations of discrimination in discharges and in promotions to nonbargaining unit positions.

Based upon uncontroverted affidavits on file, it appears that since 1977, only twenty employees have been discharged at the Augusta Post Office. Of this number, nine were black and a tenth was the Eurasian named plaintiff Michelle Gosneigh. Furthermore, since 1977, only 18 non-bargaining unit promotions were made at the Au-

2. The statute of limitations is tolled for putative class members' individual claims from the date of the filing of the complaint by the named representative. A class may not include individuals who could not have exhausted their remedies at the time the suit was filed. Thus, in this case, the class may not include individuals who could not have filed their claim of discrimination by June 5, 1977.

**410**

gusta Post Office, of which four were black, two had a Spanish surname and one was of Oriental origin. Thus, these numbers reveal a potential class of some twenty-one to twenty-four members. Since defendant would have records stating the identity and addresses of these individuals, the Court finds that the number of putative class members is not so large as to make joinder impracticable. *See Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300 (5th Cir. 1980) (class of thirty-four does not satisfy numerosity requirement as a matter of law); *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980) (class of thirty-one held not so numerous as to make joinder impracticable).

Accordingly, based upon the foregoing findings, which progressively limit the putative class through analysis of commonality, adequacy of representation, and numerosity, the Court determines that this case shall proceed as an action on individual claims, and, thus, plaintiffs' motion for class certification is denied.