**Oneida ADAMES et alia, Plaintiffs,**

v.

**The MITSUBISHI BANK, LTD., Defendant.**

**No. CV–88–0721.**

United States District Court, E.D. New York.

April 27, 1989.

Hockert & Flamm, New York City, for plaintiffs.

Epstein Becker & Green, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This action was brought pursuant to 42 U.S.C. § 1981 by Oneida Adames, Mirsada Krlic, Nancy Farinola, and Lisa Poggi to redress alleged discrimination on the basis of race, descent, ancestry, and ethnic characteristics in the terms and conditions of their employment by the defendant, the Mitsubishi Bank, Ltd. (the "Bank"). Jurisdiction of this Court is predicated upon 28 U.S.C. § 1343(4). Plaintiffs seek damages as well as declaratory and injunctive relief including back pay.

This matter is currently before the Court on plaintiffs' motion for certification of a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and 23(b)(3) on behalf of a class of all persons of non-Oriental and non-Japanese origin who are or were employed by defendant, who have or had a reasonable expectation of being promoted or transferred, and who have been or will be adversely affected in their employment by reason of defendant's practices, policies or customs in effect on or since March 9, 1985, which discriminate on the basis of race, ancestry, and ethnic background.

Plaintiffs' complaint alleges that the defendant has engaged in discrimination based on race, ancestry, and ethnic background in its (a) promotion policies, (b) administration of employee benefits and perquisites, (c) application of performance standards, and (d) use of deprecatory remarks and ethnic slurs. The suit does not challenge defendant's hiring practices.

Defendant opposes this motion on virtually all of the available grounds. Specifically, defendant contends that plaintiffs have failed to meet their burden of demonstrating that the class is clearly defined, that it is sufficiently numerous to warrant class certification, that common questions predominate, that the representative claims are typical of those of the class, and that the representatives will adequately represent it. In addition, defendant contends that plaintiffs cannot demonstrate that class-wide injunctive relief is appropriate, thus failing to satisfy Rule 23(b)(2). Final-

ly, defendant contends that individual claims predominate over the purported class claims so as to bar certification under Rule 23(b)(3).

The Court concludes that plaintiffs have met the requirements of Federal Rules of Civil Procedure 23(a) and (b)(2) but for a class narrower than the one sought.

Leave was granted by the Court to conduct discovery addressed to certification issues in July 1988. Between July and October, three of the four named plaintiffs were deposed. Plaintiffs claim that defendant violated its discovery obligations in that, although plaintiffs allege a nationwide class, defendant objected to producing documents regarding the Bank's United States branches outside the New York branch as not relevant. Defendant also declined to provide other requested data relating to salary and other perquisites of bank employees in the Bank's New York office. On October 4, 1988, this Court granted leave for discovery on class certification issues to continue through December 31, 1988, and specifically instructed the parties that any discovery disputes should be brought promptly to this Court's attention for resolution. Although defendant apparently thereafter continued to refuse to furnish plaintiffs with information concerning other U.S. branches, plaintiffs never brought their discovery dispute before the Court for resolution. As noted below and as class counsel candidly acknowledged at oral argument, this history raises practical questions concerning the adequacy of plaintiffs as representatives of a nationwide class.

The following facts are derived from the complaint and the papers submitted in connection with the present motion. Disputes between the parties as to facts are noted.

The Bank is a Japanese corporation with headquarters in Tokyo, Japan. In the United States, the Bank has branch offices in New York City and Chicago. Offices of the Bank in six other cities, Houston, Los Angeles, San Francisco, Columbus, Portland, Oregon, and Seattle, are referred to by the parties as "agency or representative offices" apparently performing banking services of a more limited sort than those provided in New York and Chicago.

According to the defendant, the Bank's United States branches, particularly in New York, engage in general commercial banking. The offices were initially established to assist the Bank's principal office in Japan in servicing Japanese corporations that were engaged in business in the United States. Over the last ten years the Bank has sought to provide loans for both Japanese, American, and other non-Japanese corporations. In order to ensure coordination worldwide of the Bank's lending standards, the Bank's head office is consulted regarding decisions as to whether to provide financing to companies that apply for loans in the Bank's United States offices.

The four named plaintiffs were hired by the Bank to work in its New York Office. Three of the named plaintiffs are caucasian/American women; one, Oneida Adames is of Hispanic/American origin. All four plaintiffs resigned their positions after March 1985 allegedly as a result of defendant's discriminatory practices.

Plaintiff Oneida Adames claims that she was hired to work as an "analyst" but was actually employed as an "administrative assistant" during the period of her employment with the Bank from Oct. 1, 1982, until July 18, 1987. She claims to have been denied promotional and transfer opportunities. Because of this denial, she resigned in July 1987.

Nancy Farinola alleges that she was hired by the bank on Feb. 3, 1986, with the understanding that she would work as an analyst. Instead, she was employed as an administrative assistant from Feb. 3, 1986, until June 19, 1987. Because of alleged denials of promotional opportunities which she was promised and which she had sought, she resigned in June 1987.

Mirsada Krlic claims to have been hired to work as an analyst in New York on August 4, 1986. Until her resignation in October 1987, she was employed as an administrative assistant. During that period, she was denied promotional opportunities that she had requested.

Lisa Poggi, employed with the Bank from September 4, 1984, until December 3, 1985, alleges that she was also hired as an analyst but was, in fact, employed as an administrative assistant. Although she indicated her desire for transfer or promotion, she says she was denied such opportunities.

All four named plaintiffs have submitted affidavits alleging discrimination by the Bank. Affidavits of other employees supporting plaintiffs' contentions have also been submitted. All of the affiants claim knowledge of other individuals similarly situated who have been adversely affected by discrimination practiced by the Bank. The affiants also claim to know of no member of the putative class in their respective offices who achieved a transfer or promotion during the period of the affiants' employment. Only one affiant did not work in the New York office; she is a former employee of the Houston agency office.

According to defendant, the Bank's head office regularly assigns executive and managerial employees from the head office in Japan to overseas offices throughout the world on assignments of limited duration. Due to the temporary nature of their assignments, these individuals are referred to as "rotating staff." Defendant states that salaries paid to rotating staff are determined by the Bank's head office and include compensation for costs associated with living and working in a foreign country. The individuals hired locally by the Bank's offices are referred to as "local" or non-rotating staff. The Bank contends that it hires local staff for both managerial and clerical positions. However, it does not permit local staff to transfer between offices in the United States or Japan, and the Bank's record on promoting non-Oriental local staff once hired is not at all clear. An exhibit submitted by plaintiff demonstrates that each of the fifty-five rotating officials in the New York City branch dur-

ing the period 1985 through 1987 received one or more promotions or transfers.

Plaintiffs challenge a practice which they term the Bank's "dual staff system." Plaintiffs' theory is that, under the guise of its rotating staff system, Mitsubishi in fact practices intentional racial discrimination against persons of non-Oriental ancestry and origin with no justification in terms of business necessity or legitimate desire to have a Japanese bank benefit Japanese citizens first and foremost. Moreover, they contend that promotions among local staff personnel are given predominantly to Oriental persons for invidious reasons. Plaintiffs also contend that the system has resulted in "disparate impact upon and constitute[s] disparate treatment of, all non-Japanese persons employed by the Bank's local staff in its various U.S. Offices."

## DISCUSSION

■ Section 1981 applies to employment practices and policies involving discrimination on the grounds of ancestry or ethnic characteristics. As long as the claim of discrimination is not based solely upon the place or country of origin but includes claims of discrimination due to ethnic characteristics and ancestry, the claim is cognizable under § 1981. *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). Section 1981 claims may be maintained even though national origin as well as racial or ethnic characteristics may have provided part of the motive for the discriminatory activity. Defendant argues that plaintiffs' complaint is in fact based solely on the citizenship of the rotating staff. It adds that plaintiffs have not shown that local staff of American citizenship, but of the same race and ancestry as the rotating staff, is actually treated differently than the purported class members. This contention is not dispositive. As noted, once an employment practice or activity is identified as having some ancestral, racial or ethnic component, a claim is made and section 1981 applies.[1] *See id.*

---

**1.** Defendant further argues that plaintiffs' claims are barred by the Treaty of Friendship, Commerce and Navigation between the United

States and Japan and the applicable employer choice provisions contained therein at Article VIII(1). This argument is not addressed to the

Plaintiffs are challenging alleged intentional conduct and policies of the Bank which reserve all upper-management positions, promotions, and employment perquisites for a rotating staff characterized by Japanese ancestry. Plaintiffs' showing on this motion is that, of the nine promotions in the three-year period of non-clerical positions in the New York office made prior to the commencement of this suit, only four (or 44%) involved non-Oriental personnel, despite the fact that over 80% of the New York non-clerical staff is non-Oriental. Plaintiffs argue that the practices and policies of the defendant are deliberately designed to restrict promotion and growth opportunities for all non-Oriental employees of the local non-clerical staff.

■ One who seeks to invoke Rule 23 bears the burden of demonstrating that every requirement has been satisfied. 3B J. Moore, *Moore's Federal Practice* ¶ 23[02–2]. When testing the propriety of a class action, "the rule should be given a broad rather than restrictive interpretation". *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir.1968). It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trial. *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.1984). It is clear that a motion for class certification is not an occasion for a mini-hearing on the merits, *Meyer v. MacMillan Publishing Co., Inc.,* 95 F.R.D. 411, 413 (S.D.N.Y. 1982), although it is by now well recognized that "class determination generally involves considerations that are enmeshed in

the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1977), *quoting Mercantile National Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1962); *accord, General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). However, defendant's efforts to persuade the Court that, because plaintiffs have not produced sufficient evidence of discriminatory policies or practices against a class of local staff employees, class requirements cannot be satisfied misperceive plaintiffs' burden at this stage of the litigation.

■ Although it has been recognized that suits alleging employment discrimination are often by their very nature class suits involving class-wide wrongs, compliance with the requirements of Rule 23 remains indispensable. *See Falcon, supra,* at 147, 102 S.Ct. at 2364.

■ The requirement that there be a class will not be deemed satisfied unless the description is sufficiently definite for the Court to determine whether an individual is or is not a member. 7A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1760, at 120–121. The class sought to be certified purports to cover all non-Oriental and non-Japanese employees (presumably excluding non-Orientals who are citizens of Japan) who have a reasonable understanding or expectation of receiving a promotion, transfer, or job upgrade. While plaintiffs' affidavits occa-

---

appropriateness of maintaining a class action but to the substance of plaintiffs' claim. A motion for class certification, in the absence of a simultaneous motion to dismiss or for summary judgment, is not a proper vehicle to determine liability. *See Sullivan v. Chase Investment Services of Boston,* 79 F.R.D. 246 (N.D.Ca.1978). There is nothing in Rule 23 to preclude the Court from examining the merits of plaintiffs' claims on a proper Rule 12(b) motion or Rule 56 motion simply because such a motion is returnable contemporaneously with a class motion. *Lorber v. Beebe,* 407 F.Supp. 279, 291 (S.D.N.Y.1975). However, the Court may not transform a motion to certify a class, standing alone, into a motion to determine plaintiffs' likelihood of success on the merits. If the Court

is only considering a motion to certify a class, the Court should accept plaintiff's allegations concerning the merits of their claim and determine whether the Rule 23 requirements are met. *See Consor v. Occidental Life Ins. Co. of California,* 469 F.Supp. 1110, 1113 (N.D.Tex. 1979). Defendant here has not challenged the adequacy of the complaint or any part thereof under Rule 12(b) of the Federal Rules of Civil Procedure, nor has it filed a motion for summary judgment pursuant to Rule 56. *See also Boylan v. New York Times Co.,* 13 Empl.Prac. Dec. (CCH) 11,575, 1977 WL 811 (S.D.N.Y.1977). Whether plaintiffs will be able to produce sufficient facts to survive a Rule 12(b) or Rule 56 join is therefore not now addressed in determining the issue of class certification.

sionally refer to "caucasian and American" employees as the putative members of the class, later submissions make clear that the named plaintiffs seek also to represent Hispanic, black, and all other non-Oriental employees (unless, presumably, they are citizens of Japan). Excluded from this class are American born or other locally hired persons who are of Oriental race, ancestry, or ethnic origin.

Defendant initially contended that plaintiffs' description of the class was too vague and argued that plaintiffs have improperly used the Bank's "salary grade" personnel information to define class membership.

Plaintiffs, recognizing the difficulty, have modified the class definition to seek certification not on the basis of title or salary grade exclusively but based on the criterion of whether the individual occupies a position in which he or she has a "reasonable expectation of promotion." In deciding whether a given position carries with it a reasonable expectation of promotion, job title may be determinative at certain levels, and salary grade information furnished by the Bank may be determinative for other positions. Thus, plaintiffs suggest salary grades 7 and above be considered *prima facie* as "management-oriented" personnel, possessing a reasonable expectation for advancement to managerial positions. At salary grades 5 and 6, a lesser expectation of achieving managerial status may exist for individuals showing extraordinary talents.

Depositions of Bank officials familiar with these salary grades demonstrate that excessive reliance upon these grades as a basis for identifying the composition of the class would be improper. Some grades have been shown to be set primarily according to market demand for certain positions, not according to potential for promotion. For example, telex operators command a high job grade because their availability in the market demands a relatively high salary, but they are not likely candidates for "management-oriented" positions. Defendant's arguments themselves show, however, that the definition of the class is sufficiently precise to permit its application in a fact-based proceeding. Accordingly,

plaintiffs have met the test of definiteness in the class description.

■ 1. *Numerosity.* Plaintiffs are not required to establish the precise number of the purported class. *Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 503 (S.D.N.Y.1984). Whether the numerosity requirement is satisfied depends upon the facts of each case. 7A Wright, Miller & Kane § 1762, at 195. Factors to be considered in deciding whether numerosity is such that "joinder of all members is impracticable" include the number of parties involved, the inconvenience of trying individual suits and the size of the individual claims. *Id.* at 188, 192.

According to the plaintiffs, the number of current and former non-clerical management and management oriented employees in the Bank's New York branch is approximately 96. If current and former "clerical but growth-oriented employees" are included in the class composition, that number rises to 142. According to defendant the number of employees in the New York office with a "reasonable expectation of promotion" employed between 1985 and the present is 30. Defendant's estimate is, however, based upon the Bank's current evaluations of the employees' ability, experience in banking, and level of education and, hence, limits the class to those who are immediately promotable or transferable, which is a narrower group than plaintiffs seek to represent.

■ Federal courts have not set a specific number which will satisfy the numerosity requirement. One hundred forty-two members are clearly sufficient to satisfy the numerosity requirement. In appropriate cases, classes between 30 and 50 have been certified. The real issue is whether the individual joinder of each class member is a more practicable alternative. Since here a number of putative members are current employees, the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable. Since the economic stakes may vary from considerable for those like the named plaintiffs who have resigned to negligible for those who have

just entered on employment, the numbers are sufficient to persuade the Court that joinder is not a practical alternative.

2. *Common Questions of Law or Fact.* In *Falcon, supra,* 457 U.S. 147, 102 S.Ct. 2364, the Supreme Court noted:

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."

*Id.* at 157 n. 13, 102 S.Ct. at 2370 n. 13.

■ Rule 23(a)(2) does not require that all questions of law or fact be common. *Weiss v. York Hospital,* 745 F.2d 786, 809 (3d Cir.1984). Class action treatment may be appropriate where a pattern of discrimination is challenged. *See McKenzie v. Sawyer,* 684 F.2d 62, 73–74 (D.C.Cir.1982). Here, plaintiffs have satisfied the basic requirement of *Falcon* that there be a "specific presentation identifying the questions of law or fact that [are] common to the claims of the [plaintiffs] and of members of the class [they wish] to represent." *Id.* at 158, 102 S.Ct. at 2371. Allegations of similar discriminatory employment practices satisfy the commonality and typicality requirements of Rule 23(a). *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15. When the putative class is limited to current and former employees of the New York office, satisfaction of the commonality and typicality requirements is readily apparent.

Defendant argues that differences in the factual circumstances of the class members preclude certification. The decisions in *Falcon* and *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), on which defendant relies, do not hold that there must be a showing of qualification for the positions from which exclusion is alleged prior to certification of a class. As the court stated in *Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983),

"[o]bviously, the bank's allegedly discriminatory promotion procedures will affect individual employees in different ways because of their diverse qualifications and ambitions. These factual variations are not sufficient to deny class treatment to the claims that have a common thread of discrimination."

*Id.* at 561 (citation omitted). The *Paxton* court went on to state that typicality is not defeated because of the varied promotional opportunities at issue or the differing qualifications of the plaintiffs and class members. *Id.* at 562.

■ 3. *Adequacy of Representation.* In *Falcon,* the Supreme Court noted that the typicality and commonality requirements "also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. The requirement is twofold. First, the representative's " 'attorney [must be] qualified, experienced, and generally able to conduct the proposed litigation,' and the litigants must not be involved in a collusive suit." *Burka v. New York City Transit Authority,* 110 F.R.D. 595, 601 (S.D.N.Y.1986), *quoting Eisen v. Carlisle & Jacquelin, supra,* at 562. Here, there is nothing to suggest the inadequacy of plaintiffs counsel's capacity to litigate the issues with respect to a New York class. Defendant does not dispute plaintiffs' counsel's experience in civil rights actions of this nature. Nor is there any reason to suspect a collusive suit.

■ Second, Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Defendant asserts the individual plaintiffs' claims cannot be typical or present common

questions of law or fact with those of the putative class members because their interests conflict. The Bank argues that personnel at different employment levels may have antagonistic interests in issues such as promotions and transfers. *See Gilchrist v. Bolger*, 89 F.R.D. 402, 408 (D.Ga. 1981). However, the case law makes clear that superficial conflicts of this sort will not preclude class certification where common discriminatory employment practices apply to different positions. *See McKenzie v. Sawyer, supra,* at 74. The named plaintiffs need not possess the same qualifications or have the same employment status as the purported class members. *See Carpenter v. Stephen F. Austin State University,* 706 F.2d 608 (5th Cir.1983). No showing has been made that class member transfers or promotions can only be made at the expense of another class member or that, in all events, money damages is not an adequate alternative remedy.

Plaintiffs' counsel, however, has not demonstrated that it would be able adequately to represent members of a proposed class from the Bank's United States offices outside New York. Class discovery conducted beyond the New York branch has been very limited. Counsel concedes that financial limitations have precluded further efforts since plaintiffs' counsel has indicated that the discovery necessary to pursue this litigation on behalf of a nationwide class is presently beyond the means of the named plaintiffs, the Court determines that the adequacy of representation requirement can be satisfied only with respect to a class of New York plaintiffs.

### Rule 23(b)(2)

In addition to all of the foregoing requirements, plaintiffs must satisfy one of the three prongs of Rule 23(b). Plaintiffs argue that the class action meets all of the requirements of 23(b)(2) and (3). Generally, when a particular action qualifies under Rule 23(b)(2) as well as Rule 23(b)(3), it should be treated as if it had been brought under Rule 23(b)(2). *See* 7A Wright, Miller & Kane § 1777, at 521.

To fall within 23(b)(2), a suit must meet two factors: (a) the defendant's conduct must be "generally applicable" to the class, and (b) final injunctive or declaratory relief must be sought in favor of the class. Here, essential to the claims propounded are the central allegations that the defendant has limited the employment opportunities of the class through discrimination on the basis of race, ancestry, or ethnic origin. An action may properly be brought under this provision even where the defendant contests the allegation that his conduct has been discriminatory. The fact that there is a factual dispute concerning whether the requirement that defendant acted on grounds generally applicable to the class is satisfied will not bar class certification. 7A Wright, Miller & Kane § 1775.

Plaintiffs seek an injunction against the Bank whose alleged racially discriminatory actions have adversely affected the class as a whole. Although plaintiffs have resigned their employment, they seek reinstatement in a non-discriminatory climate. To this end, they seek to enjoin defendant from maintaining practices resulting in refusal to transfer, train or promote non-Oriental employees within the defendant's organization and from engaging in similarly motivated denials of employee benefits and perquisites. A demand for monetary damages in the form of back pay and front pay does not defeat certification under Rule 23(b)(2) since it does not appear to be the primary motivation for the suit.

Since Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action may proceed under subdivision (b)(2). A class action may be maintained under the 23(b)(2) alleging a general course of racial discrimination by an employer or union, though the discrimination may have affected different class members in different ways and at different times. *See, e.g., Gibson v. Local 40, Supercargoes & Checkers,* 543 F.2d 1259 (9th Cir.1976); *see also Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972).

For the foregoing reasons, the Court finds it appropriate to certify a class of non-Oriental persons not citizens of Japan who are or were employees of the defendant in defendant's New York office and who have or had a reasonable expectation of promotion or transfer and have been adversely affected in their employment status by reason of practices, policies or customs of the defendant in effect on or after March 9, 1985, which discriminate on the basis of ancestry, race or ethnic background.

For the reasons stated above, plaintiffs' motion for class certification is granted in accordance with the terms hereof.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.