Margot **LUEDKE, Janet Weeks, Patricia Herlihy, Christine Klepeis, Christopher Mulraine, William Worrell, Gladys Healy, Cecilia Tagliaferri, Marie Leicht, Samuel P. Leinbach, Jr., Merlin Leon Tryon, Han S. Oey, and John Green, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**DELTA AIRLINES, INC., Defendant and Third–Party Plaintiff,**

v.

**PAN AM CORPORATION, PAA Corp., Pan American World Airways, Inc., Allmat International, Inc., Pan Am Shuttle, Inc., Pan Am Express, Inc., Alert Management Systems, Inc., Pan Am Commercial Services, Inc., The Official Committee of Unsecured Creditors of Pan Am Corporation, et al., A.I. Leasing II, Inc., Air Line Pilots Association, International, Caterair International Corp., Electronic Services International, Inc., IBJ Schroder Bank & Trust Co., International Brotherhood of Teamsters, Midlantic National Bank, MTU Maintenance GMBH, Ernest L. Ransome, III, S.G. Warburg Soditic S.A., Transport Workers Union of America, AFL–CIO, United Technologies Corp., and Anthony Ben Walsh, Third–Party Defendants.**

No. 92 Civ. 1778 (RPP).

United States District Court, S.D. New York.

March 10, 1993.

Whitman & Ransom, New York City by John E. Tardera, John M. Hadlock, William M. Millard, Jill C. Greenwald, for plaintiffs.

Davis Polk & Wardwell, New York City by Dennis E. Glazer, for defendant and third-party plaintiff.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs bring this action against Defendant Delta Airlines, Inc. ("Delta"), seeking lost wages, benefits, and other monetary losses allegedly arising out of Delta's involvement in the failed efforts to reorganize an insolvent Pan Am Corporation and its subsidiaries ("Pan Am"). The plaintiffs move under Federal Rule of Civil Procedure 23(c) for an order determining that this action shall be maintained as a class action on behalf of themselves and all others similarly situated. For the reasons set forth below, Plaintiffs' motion for certification as a class action is denied.

### BACKGROUND

Plaintiffs are former Pan Am employees. Pan Am filed for bankruptcy under Chapter 11 of the Bankruptcy Code on January 8, 1991. While under the protection of the Bankruptcy Court, Pan Am continued to manage and operate its properties as a debtor in possession.

Plaintiffs allege that during 1991, Delta entered into an agreement with the debtor in possession whereby Pan Am sold Delta its Shuttle and its North Atlantic Routes in exchange for cash and a promise that Delta would provide funding to Pan Am while it was in Chapter 11 proceedings and financial support to a reorganized Pan Am ("Pan Am II") once it emerged from such proceedings. Compl. at ¶ 2. The plaintiffs further allege that from August through November of 1991, Delta gave them numerous assurances that its financial assistance to Pan Am and Pan Am II "would ensure the employment by Pan Am II of at least 6,900 Pan Am employees." *Id.* at ¶ 3. The business plan for Pan Am II, submitted by Pan Am and the Creditors Committee to the Bankruptcy Court on October 24, 1991, stated that Pan Am II would "employ approximately 7,500 people." *Id.* at ¶¶ 71, 72.

Each of the named plaintiffs maintains that he or she was advised and/or otherwise knew as a result of seniority that he or she would receive one of these 7,500 jobs with Pan Am II. *Id.* at ¶ 61. Plaintiffs allege that they relied on Delta's representations of financial support for Pan Am and Pan Am II and of continued employment with Pan Am II by, for example, declining

to pursue other employment opportunities or relocating to Miami, the anticipated hub of Pan Am II's operations. *Id.* at ¶ 78.

The Complaint states that on December 3, 1991, Delta "abruptly declined to provide promised funding to Pan Am or to confirm its commitment to support and invest in Pan Am II," and thereby caused Pan Am to cease operations on the following day. *Id.* at ¶ 3, 4. When Pan Am went out of business, the plaintiffs were among approximately 10,000 employees who lost their jobs, salaries, and benefits.

Plaintiffs bring this action for lost wages, benefits, and out-of-pocket monetary damages both as intended third-party beneficiaries of the agreement between Pan Am and Delta and as persons "who otherwise relied on Delta's numerous representations of its commitment to Pan Am and to the plaintiffs." *Id.* at ¶ 1. They assert four claims for relief against Delta: breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, and breach of fiduciary duty.

This action is only one of several lawsuits arising out of Delta's dealings with the bankrupt Pan Am. Pan Am and certain of its Creditors' Committees have instituted an adversary proceeding in the Bankruptcy Court for this District against Delta alleging, *inter alia,* that Delta breached its contractual obligations to support the Pan Am reorganization. The Bankruptcy Court action includes a claim for lost wages of Pan Am employees who would have been given jobs with Pan Am II. By Order dated June 12, 1992, this Court consolidated this action with the adversary proceedings in the Bankruptcy Court for discovery purposes only. Discovery has been proceeding under the supervision of Bankruptcy Judge Blackshear.

Plaintiffs now ask this Court to certify this action as a class action on behalf of themselves and all others similarly situated, namely:

all persons employed by Pan Am or its unions as of December 3, 1991, who were advised that they would be employed by Pan Am II or its unions and/or as a result of their seniority with Pan Am

were assured of positions with Pan Am II or its unions and who incurred out-of-pocket losses and/or lost their jobs and employment benefits as a result of the cessation of Pan Am's business operations on December 4, 1991.

*Id.* at ¶ 21; Notice of Motion for Class Action Certification, dated July 24, 1992 ("Notice of Motion").

### DISCUSSION

In order to proceed as a class action, the plaintiffs must obtain the Court's certification under Federal Rule of Civil Procedure 23(c)(1). Plaintiffs bear the burden of proving that their action satisfies all four prerequisites to a class action enumerated in Rule 23(a) and falls within one of the three categories of permissible class actions defined by Rule 23(b). *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Rule 23(a) provides that one or more members of a class may sue on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) articulates the additional requirement that an action may be maintained as a class action only if it fits into one of three categories. Plaintiffs here seek class action certification under category (3), which describes a lawsuit in which:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

Although Rule 23 does not explicitly address the problem of identifying class

members, courts have recognized that parties who seek class action certification must establish that a suitable method of identification is "administratively feasible." *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y.1983) (citing 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1760, at 581 (1972)); *accord Barnett v. Bowen*, 794 F.2d 17, 23 (2d Cir.1986). A "basic requirement" of a class action under Rule 23 is that class membership must be "capable of ascertainment under some objective standard." *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir.1986) (quoting 3B *Moore's Federal Practice* ¶ 23.04[1], at 23-119).

Delta opposes Plaintiffs' motion for class action certification on the following grounds: (1) the proposed class cannot be properly defined, and its members cannot be identified; (2) common questions of law and fact do not predominate over individual issues; (3) the claims of the named plaintiffs are not typical of those of the class; (4) the named plaintiffs are not adequate class representatives as they have interests antagonistic to those of the class; and (5) individual actions are superior to a class action in this situation. Because this Court agrees with Delta's first argument insofar as it maintains that identification of class members has not been shown to be administratively feasible, Delta's remaining grounds of objection to class action certification need not be addressed.

Plaintiffs' proposed definition of the class they seek to represent encompasses both Pan Am employees "who were advised that they would be employed by Pan Am II or its unions" and employees who "as a result of their seniority with Pan Am were assured of positions with Pan Am II or its unions." The over 10,000 persons

employed by Pan Am or its unions as of December 3, 1991, would be able to claim membership in either group or in both groups. The Court would then face the task of determining which of these potentially 10,000 claimants actually qualify for class membership.

In order to determine who "were advised that they would be employed by Pan Am II or its unions," the Court would need to evaluate the authority of the individual who so advised each claimant, the reasonableness of each claimant's reliance on the assurance of employment, and, particularly in cases where the assurance was provided orally, the credibility of the claimant.[1] The Court could not just rely on the subjective impressions of the claimants that they were assured of jobs. *See Crosby*, 796 F.2d at 580.

The task of evaluating the reasonableness of each claimant's belief that he or she was promised employment and could rely on such a promise has the potential to embroil the Court in thousands of fact-finding inquiries. "[I]f the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir.1978).

Even a question as seemingly simple as the authority of the individual who assured a claimant of employment could present the Court with a factual tangle. The parties dispute whether Pan Am II was to be a reorganization of the existing corporation or an entirely new corporation.[2] Regard-

---

**1.** The plaintiffs have not provided the Court with any estimate as to how many Pan Am employees claim to have received assurances of future employment or how many Pan Am employees claim to have received such assurances in writing, rather than by word of mouth. The only documents submitted by Plaintiffs as evidence of assurances of employment are letters offering "employment at will" to three named plaintiffs.

**2.** Documents submitted to the Court appear to indicate that Pan Am II, although retaining Pan Am's corporate identity, would adopt an amended and restated certificate of incorporation, which would eliminate all of its present common stock and authorize the issuance of new common, class A, and preferred stock. Pan Am II would have renegotiated labor agreements, a new hub, new bylaws, and a different Board of Directors, comprised of 11 persons, to which Delta, as the holder of all Class A shares, would elect three members. *See* Plaintiffs' Appendix

less of which characterization is correct, the parties acknowledged at oral argument that the transformation from Pan Am towards Pan Am II involved numerous changes in management positions occurring over the course of the transitional period through November of 1991. Accordingly, were the class to be certified, the Court would have to determine with respect to each potential class member the individual who gave that potential class member assurances of employment with Pan Am II, the nature of the assurances, and the scope of the individual's authority to speak for Pan Am II with regard to that potential class member at that point in the transformation process. The plaintiffs have suggested no administratively feasible method of making these necessary factual determinations.

Nor have they come forward with an administratively feasible plan for determining who "as a result of their seniority with Pan Am were assured of positions with Pan Am II or its unions." The plaintiffs propose to determine membership in this group by matching union seniority lists for employees of Pan Am with staffing projections for union employees for Pan Am II. Several problems exist with respect to this plan.

First, the plaintiffs have not shown that the staffing projections and seniority lists that constitute the basis for their plan of class member identification exist in any reliable form. They have not produced any union seniority lists, and Pan Am has responded to Plaintiffs' First Request for Production of Documents by stating that such lists no longer exist. *See* Declaration of David D. Brown, IV, in Opposition to Plaintiffs' Motion for Class Action Certification, dated Dec. 17, 1992 ("Brown Decl."), at ¶ 3. The plaintiffs have produced a table showing staffing projections for Pan Am, dated November 12, 1991. *See* Pl.App., Exh. 25. The intended purpose of this table and its reliability as an indicator of authorized staffing for Pan Am II have not been shown.

Second, even if reliable union seniority lists do exist, counsel for both parties indicated at oral argument before this Court on January 7, 1993, that it is unclear at this point whether union agreements with Pan Am II were in place so as to make these union seniority lists applicable to the reorganized entity. Certain documents indicate that Delta was not obliged to go forward with its role in the reorganization plan unless the renegotiation of Pan Am's union agreements met with Delta's approval. *See* Pl.App., Exh. 14.

Third, the task of matching union seniority lists to staffing projections, if valid and binding upon Pan Am II, would be complicated by the fact that, as previously discussed, an undetermined number of Pan Am employees claim to have received assurances of employment with Pan Am II. If any of these employees would not have qualified for a job with Pan Am II based on seniority alone, the Court would have to determine whether Pan Am II would have given each such employee who had an assurance of future employment priority over the competing claim to employment of an employee with greater seniority. This task would be further complicated by union rules that give employees rights to "bump" less senior employees in other job categories or in other work places. In sum, the Court would need to decide how Pan Am II would have weighed over 10,000 competing claims for a somewhat lesser number of jobs. The plaintiffs have proposed no objective criteria that would enable the Court to undertake such a task.

Plaintiffs refer to several cases in which courts have determined that "a suitable method of identification seems feasible." *Barnett*, 794 F.2d at 23. None of them provides for useful analogy to the situation here.

In *Barnett*, the Court held that it would be "appropriate to define a class to include

of Exhibits in Support of Their Motion for Class Certification ("Pl.App."), Exhs. 14, 22; October 22, 1991, Letter Agreement among Delta Air Lines, Inc., Pan Am Corporation, and its Official

Committee of Unsecured Creditors, submitted to this Court by Delta on Dec. 1, 1992, at 7, Exhs. 7–10.

all applicants [for certain government benefits] who may experience unreasonable delays ..., despite the fact that the point at which delays become unreasonable may vary with the facts and circumstances of individual cases." *Id.* The Court did not discuss any proposed methods of identifying class members, but instead left the matter to be resolved on remand. On remand, the parties agreed to define the class as all applicants for benefits who had reached a certain point in the application process, and thereby enabled the district court to avoid making individualized determinations of reasonableness of delay. *Barnett v. Bowen,* 665 F.Supp. 1096, 1098 (D.Vt.1987). As a result, *Barnett* does not provide this Court with a basis for comparing the method of identifying class members that the Appellate Court there found feasible with the method proposed in this case.[3]

Other cases cited by the plaintiffs include *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82 (E.D.N.Y. 1989). Although both of these cases entailed approval of class actions that would require the district court to perform at least some individualized, fact-specific inquiries to determine class membership, neither case involved anywhere near the volume of individualized determinations that could be needed here. *Teamsters* dealt with an estimated 400 potential class members, 431 U.S. at 375, 97 S.Ct. at 1875, while *Adames* involved a maximum of 142, 133 F.R.D. at 89. In contrast, the Court here is faced with over 10,000 former Pan Am employees who could claim membership in the proposed class. The proposed class definition in this case would require the court to make an "unmanageable number" of individualized, somewhat subjective determinations of the validity of these claims. *See Rios v. Marshall,* 100 F.R.D. at 403.

Accordingly, the plaintiffs' motion for class action certification is denied because

identification of class members has not been shown to be administratively feasible.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class action certification is denied.

IT IS SO ORDERED.

---

**3.** In general, determining whether delays are reasonable or unreasonable, as required to identify class members in *Barnett,* is comparatively

simple to determining which of vying employees have a right to particular jobs when there are more employees than jobs available.